542 F.2d 356
 13 Fair Empl.Prac.Cas. 813,
12 Empl. Prac. Dec. P 11,205
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
The NEW YORK TIMES BROADCASTING SERVICE, INC., d/b/a
WREC-TV, Defendant-Appellee.
 No. 75-2055.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 6, 1976.
Decided Oct. 4, 1976.
 
 Susan J. Johnson, Beatrice Rosenberg, Margaret Poles, E.E.O.C., Appellate Div., Washington, D. C., Ellis L. Bert, Lawrence J. Kamenetzky, E.E.O.C., Atlanta Regional Center, Atlanta, Ga., for plaintiff-appellant.
 John J. Stanton, Jr., New York City, Bowling & Jackson, Gordon Jackson, W. Kerby Bowling, Memphis, Tenn., for defendant-appellee.
 Before PECK, McCREE and ENGEL, Circuit Judges.
 ENGEL, Circuit Judge.
 
 
 1
 This is an appeal from a judgment entered in favor of the defendant television station in an action brought by the Equal Employment Opportunity Commission (EEOC) pursuant to 42 U.S.C. § 2000e-5(f)(1). In its complaint the EEOC alleged that the New York Times Broadcasting Service, Inc., d/b/a WREC-TV, had violated Title VII of the Civil Rights Act of 1964 by:
 
 
 2
 (a) Failing and refusing to recruit and hire females on an equal basis with males and otherwise discriminating against females with respect to terms, conditions, and privileges of employment because of their sex.
 
 
 3
 (b) Maintaining departments and job classifications which are segregated on the basis of sex and otherwise limiting, segregating and classifying employees in a way which deprives and tends to deprive females of employment opportunities and otherwise adversely affects their status because of their sex.[1]
 
 
 4
 The EEOC complaint sought both injunctive and monetary relief, particularly an injunction against the television station prohibiting it from engaging in any practice which interfered with the employment opportunities of women. The complaint also sought an award of back pay for those women discriminated against by the defendant's employment practices.
 
 
 5
 The EEOC action arose out of the unsatisfactory resolution of a complaint filed with the Commission by Camilla Wilson, alleging that she had been discriminated against on the basis of her sex. On December 9, 1971, Ms. Wilson applied for a job with WREC-TV as a television announcer or newswriter-reporter. Her educational background included two master's degrees, one in journalism, but her experience was limited to work as a correspondent and photographer in Vietnam. She had no experience in radio or television broadcasting. Her complaint stemmed from a comment made by Mr. Russell Hodge, News Director of WREC-TV, who conducted the interview with Ms. Wilson. During the interview Mr. Hodge stated that he already had a woman reporter and did not expect to hire another. Nevertheless, although he did not ask her to file a formal application, he told Ms. Wilson to check back in a few weeks to see if there were any openings. When she called back, however, Mr. Hodge told her that the position she was seeking had already been filled by Mr. Paul Barnett, an employee of WREC radio with more than 20 years experience in radio and television broadcasting. Thereafter Ms. Wilson filed her sex discrimination charge with the EEOC. After she did so, the television station called and asked her to come in for an interview and to file a job application, but upon the advice of the EEOC, she declined to do so.
 
 
 6
 The EEOC action charged defendant with sex discrimination in the announcer and reporter classifications in the production and news units of WREC-TV's program department.[2] At the time Ms. Wilson applied for a job with defendant in December 1971, WREC-TV had one female television reporter-writer in its news department out of five employed. In the announcer category, WREC-TV had never employed a female prior to August 1973. In the news department, three females were hired as reporter-writer trainees after August 1972, and in the announcer category one female trainee was hired in 1973. The EEOC charged that males hired in these job classifications were not hired as "trainees" and were paid at a higher rate than their female counterparts.
 
 
 7
 After hearing the evidence in the case, the district judge made findings of fact and conclusions of law denying all relief which the plaintiff had sought. Specifically, he concluded that with regard to the charging party, Ms. Wilson, the evidence failed to show she was denied employment with the defendant because of her sex. He also held that Ms. Wilson had suffered no damages and had rebuffed good faith efforts by the company to reconsider her application after learning of her charge. With respect to the female employees of WREC-TV generally, the court held that the evidence did not support the EEOC contention that the defendant discriminated against them in terms of pay. The action was, therefore, dismissed. On appeal, the EEOC does not claim that any of the district judge's findings of fact are clearly erroneous, but rather argues that the facts as found support its claim for relief.
 
 
 8
 With regard to the individual claim of Ms. Wilson for back pay, we affirm the district court's ruling that she suffered no damages by reason of her unsuccessful attempt to obtain employment with WREC-TV. Ms. Wilson's own testimony indicates that she earned $8,700 in 1972 while working for the Memphis Board of Education, and $16,000 in 1973, including outside income from her writing. The evidence shows that Mr. Paul Barnett, who was hired on February 13, 1972 for the position which Ms. Wilson sought, was paid initially $135 per week or about $7,000 per year.
 
 
 9
 42 U.S.C. § 2000e-5(g) specifically provides that any award of back pay otherwise allowable will be reduced by interim earnings of the person discriminated against. Assuming, with out deciding, that Ms. Wilson was discriminated against by the defendant, she clearly was not damaged monetarily thereby. She no longer seeks employment with the defendant. Accordingly, the district judge did not err in entering judgment for defendant as to that part of the action which sought relief for Ms. Wilson.
 
 
 10
 We find no reversible error in the district court's determination that on the facts here, the discrepancy in pay between that afforded male employees and female employees was not based upon considerations of sex. The EEOC argues that sex discrimination was shown by the fact that all the females hired as reporter-writers or announcers after 1971 were classified as "trainees" while only one male was hired as a "trainee" and several were not. Further, the plaintiff notes, all persons who were hired went through a training period, and the females hired were uniformly paid a lower starting wage than males who were hired.
 
 
 11
 A careful analysis of the evidence presented at trial, however, indicates that the starting salaries paid to new employees bore a direct relationship to the prior broadcast experience they possessed at the time of hire. The evidence shows that the females hired at lower salaries uniformly had less broadcast experience than their male counterparts.[3] Likewise, we find no compelling significance in the fact that the females hired were classified as "trainees," since the evidence showed that a male employee with little broadcast experience was also so classified. In sum, the district court's findings in this regard are not clearly erroneous.
 
 
 12
 Finally, the EEOC claims that the proofs showed as a matter of law that the television station, by primary reliance upon a discriminatory source for recruitment of personnel which resulted in almost all males being hired in the two relevant job classifications, was guilty of a violation of the Act. Upon the unrebutted proofs we are obliged to agree.
 
 
 13
 The district court found that the defendant had utilized WREC radio as "one of its primary sources of recruitment for broadcast news personnel." The New York Times Broadcasting Service, Inc. first acquired ownership of WREC-TV, a television station in Memphis, on October 15, 1971. Prior to that time the television station had been owned and operated, along with FM and AM radio stations WREC-AM and WREC-FM, by the Cowles Broadcasting Service, Inc. Thus, until the change in ownership, the operations and personnel policies of the several stations had been somewhat consolidated and it had been the practice for personnel of the TV station to be recruited from employees of the AM and FM radio stations. While the sale of WREC-TV brought about its severance from the radio stations, all stations continued to occupy the same facilities. It was, therefore, not surprising that the television station should continue to recruit personnel primarily from the radio stations.
 
 
 14
 It is at this point that the difficulty arises, for the unrebutted testimony at the trial clearly shows that the hiring policies of WREC radio under the ownership of Cowles Broadcasting Service were discriminatory. Neither WREC radio nor WREC-TV had ever employed a female announcer prior to the commencement of the district court action. With respect to the reporter job classifications, only one female reporter-writer had been so hired prior to the time Ms. Wilson filed her charge.
 
 
 15
 The district court made no reference to statistical evidence whatever. We have previously held, although primarily in cases of race discrimination under Title VII, that statistical evidence is an important tool for placing seemingly inoffensive employment practices in their proper perspective, Senter v. General Motors Corp., 532 F.2d 511 (6th Cir. 1976); Afro-American Patrolmen's League v. Duck, 503 F.2d 294 (6th Cir. 1974); United States v. Masonry Contractors Association, 497 F.2d 871 (6th Cir. 1974). While we have also held that standards applicable to cases of race discrimination under Title VII may be generally applicable to cases charging discrimination on account of sex, Palmer v. General Mills, Inc., 513 F.2d 1040 (6th Cir. 1975), we recognize that the two types of discrimination, though having a common source of prohibition in Title VII, have divergent histories and need not always be treated identically.
 
 
 16
 We recognize that statistical evidence is of much greater value in discrimination cases where large numbers of employees are involved and fewer subjective personalized factors are considered in determining whether an offer of employment is to be made. Nevertheless, the comment of Mr. Hodge to Ms. Wilson strongly supports the inference of a pattern of discrimination which the statistical evidence suggests.[4] The evidence of discrimination presented here cast a heavy burden upon the defendant to show that its employment practices were justified despite their discriminatory impact. Although there was evidence presented, and the district judge found, that prior radio broadcasting experience was useful for the positions involved herein, we do not think this justified defendant's practice of recruiting the majority of its personnel in these job classifications from WREC radio. In Head v. Timken Roller Bearing Co., 486 F.2d 870 (6th Cir. 1973), we noted that business necessity only justified a discriminatory employment practice where no acceptable alternative policies or practices would better accomplish the business purpose advanced with less discriminatory impact. Subsequent to the filing of the complaint with the EEOC in this case, defendant was able to hire several qualified females in these job classifications from sources other than WREC radio, and we thus conclude that defendant has failed to show any adequate business necessity to justify its practice of hiring almost all males prior to 1972.
 
 
 17
 The defendant in its brief and the district court in its opinion rely heavily upon the corrective practices which have been taken by the television station since the filing of Ms. Wilson's complaint and the filing of the EEOC action in the district court. It may be true that under new management more enlightened attitudes have prevailed and that this has had a distinctly beneficial effect upon employment practices and resulted in a more balanced composition of the staff at the television station. However, we agree with the EEOC that the voluntary changes effectuated by the defendant, as salutary as they may be, do not render moot the questions presented in the litigation or make judicial sanctions inappropriate, Rowe v. General Motors Corp., 457 F.2d 348 (5th Cir. 1972); United States v. I.B.E.W., Local 38, 428 F.2d 144 (6th Cir. 1970), but are rather more properly considered and must inevitably bear upon the extent of any corrective action to be ordered.
 
 
 18
 We turn then to the question of the relief to which the plaintiff is entitled. As noted earlier, we find that the record supports the district court's finding that Ms. Wilson was not damaged by defendant's refusal to hire her even assuming that the decision was based upon sex, and that the employee classifications and pay scales of the defendant were not discriminatory. Nevertheless, since we find that the undisputed evidence shows discriminatory hiring practices were employed by the defendant, at least as of the time a complaint was brought before the EEOC, plaintiff is entitled to injunctive relief prohibiting this conduct. While the defendant's apparent good faith effort to eliminate its discriminatory practices does not moot plaintiff's right to relief, that factor may, of course, be considered by the district court in considering the scope of the injunctive relief to which plaintiff is entitled.
 
 
 19
 The judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings.
 
 
 
 [1]
 Comparable charges of racial discrimination were dismissed and are not at issue in this appeal
 
 
 [2]
 The defendant WREC-TV maintains five major departments in its operation. This suit focuses on alleged sex discrimination in only one department, the program department. More specifically, it focuses up two job classifications within that department, those of "announcer" and "writer-reporter."
 
 
 [3]
 The defendant introduced evidence at trial that prior experience in radio broadcasting was useful for the announcer and writer-reporter positions at issue here
 
 
 [4]
 That Ms. Wilson's personal claim of discrimination may have ultimately become moot does not negate the pattern and practices aspect of this suit, if otherwise proved, nor does it render irrelevant evidence of discrimination which was shown with regard to defendant's conduct concerning Ms. Wilson. Cf. Senter v. General Motors Corp., supra, at 516