**Shirley DANZ, Appellant,**

v.

**Mark Z. JONES II, et al., Respondents.**

**No. 47226.**

Supreme Court of Minnesota.

Feb. 3, 1978.

W. Dale Weyhrich, Nyquist, Kaisershot & Assoc., Ltd. by Charles W. Rogers, Brooklyn Center, for appellant.

Carlsen, Greiner & Law, Peter F. Greiner and Robert D. Lucas, Jr., Minneapolis, for respondents.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen. and Antonio Cortez, Sp. Asst. Atty. Gen., St. Paul (seeking reversal), amicus curiae, for Dept. of Human Rights.

Heard before ROGOSHESKE, KELLY, and YETKA, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This is an action by plaintiff, Shirley Danz, individually, against Helen Dybsjord and Mark Z. Jones II, and against Mark Z. Jones Associates, Inc. (Associates), alleging sex discrimination in employment practices in violation of Minn.St. 363.03, subd. 1(2)(c).[1] Plaintiff alleged that she had not received equal pay for performing work that was identical to that of a certain male employee of Associates.

At the close of the plaintiff's case, the action against the individual defendants, Dybsjord and Jones, was dismissed. Thereafter, the trial court in its conclusions of law, held that plaintiff had failed to meet her burden of proving that Associates had discriminated against her on the basis of sex and that she was therefore not entitled

---

1. Minn.St. 363.03, subd. 1, states in part:

"Subdivision 1. Employment. Except when based on a bona fide occupational qualification, it is an unfair employment practice:

* * * * * *

"(2) For an employer, because of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance or disability,

* * * * * *

"(c) to discriminate against a person with respect to his hire, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment;"

to recover damages. Plaintiff appeals from the judgment. We reverse and remand.

Associates was engaged in the development, construction, and management of numerous apartment complexes in the Twin Cities area. In the spring of 1973, Associates was developing a large apartment complex called Aspen Valley in Burnsville, Minnesota. The complex became available for occupancy in stages starting about September 1, 1973.

Due to its isolated location and competition from other apartment complexes in the area, Associates decided to employ full-time rental agents at Aspen Valley. Earlier in 1973, Associates had hired Dybsjord as executive coordinator to oversee the rentals of Associates' new projects.

In May or June of 1973, Dybsjord negotiated the employment of Robert Drake, then employed by Edina Realty, as a rental agent for Associates' Aspen Valley project. Drake received a salary from Associates in the amount of $75 a week, an apartment of his choice, and a commission of $25 for each apartment rented. Dybsjord had worked with Drake at Edina Realty before she was hired by Associates. Dybsjord also hired plaintiff, who was at that time employed by Associates at another project, as a second rental agent. Her compensation at Aspen Valley was an apartment of her choice and a commission of $25 for each apartment rented. It is unclear whether Dybsjord was as well acquainted with plaintiff's qualifications as she was with Drake's. Between late July 1973 and October 9, 1973, both plaintiff and Drake closed approximately the same number of leases.

Plaintiff first learned of the difference in compensation at a meeting in August or September of 1973. She subsequently demanded that she be paid the same compensation as Drake. The raise was not granted. Plaintiff was initially told that Drake's higher salary was due to his status as a breadwinner.

Sometime prior to October 9, 1973, plaintiff decided to resign and on October 9, 1973, prepared a letter of resignation. Later that same day, after writing but before delivering her resignation letter, plaintiff received notice from Associates that her services as a rental agent were no longer needed. Plaintiff thereafter delivered her letter. Associates contends that plaintiff was terminated because her attitude and enthusiasm toward the job had declined. Associates' management claims it became concerned that her attitude would affect prospective tenants. It also claims she was having problems with her co-workers.

No one was hired to replace plaintiff after she left the employ of defendant, and shortly thereafter Drake was transferred to another apartment complex. Associates then terminated the use of rental agents at Aspen Valley and began using resident management personnel and caretakers to meet with prospective tenants.

The issues raised by this appeal are:

(1) What is the proper allocation of the burden of proof in a wage discrimination case under Minn.St. c. 363?

(2) Did Associates present sufficient, proper, relevant, and admissible evidence to rebut plaintiff's prima facie case of discrimination?

(3) Did Associates show a permissible justification for terminating plaintiff's employment?

1. *Allocation of the Burden of Proof.* Plaintiff's first contention is that the trial court erred in its allocation of the burden of proof in this case. Plaintiff argues that once she has established that the employer paid workers of one sex more than workers of the opposite sex for substantially equal work, the burden of proof shifts to the employer to establish that the differential is based on factors other than sex. The trial court held that the plaintiff had the burden of proving by a preponderance of the evidence that Associates had discriminated against her in violation of c. 363.

Chapter 363 appears to be modeled after Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e, et seq. See, 51 Minn.L. Rev. 877; 52 Minn.L.Rev. 231. The language of 42 U.S.C.A. § 2000e, is remarkably

similar to that of Minn.St. c. 363. This court has applied principles developed in court decisions under Title VII for purposes of construing c. 363. *Brotherhood of Ry. & Steamship Clerks, etc. v. State,* 303 Minn. 178, 188, 229 N.W.2d 3, 9 (1975); see, also, *Zimdars v. Special School District No. 1,* 304 Minn. 288, 230 N.W.2d 465 (1975). In the context of claims of sex-based unequal compensation brought under Title VII, the Federal courts have applied the standards expressed in the Equal Pay Act of 1963, 29 U.S.C.A. § 206 in determining whether or not sex discrimination exists. Because the two statutes serve the same basic purpose with respect to prohibiting discrimination in compensation on the basis of sex, the Federal courts have reasoned that the sex discrimination prohibitions contained in Title VII must be construed *in pari materia* with the Equal Pay Act. *Orr v. Frank R. MacNeill & Son, Inc.,* 511 F.2d 166, 170 (5 Cir.), certiorari denied, 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975); *Schultz v. Wheaton Glass Co.,* 421 F.2d 259, 266 (3 Cir.), certiorari denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970).

The leading Title VII case on this problem is *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). There the United States Supreme Court stated:

> "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. * * *
>
> * * * * * *
>
> "The burden then must shift to the employer to articulate some legitimate nondiscriminatory reason for the employee's rejection." 411 U.S. 802, 93 S.Ct. 1824, 36 L.Ed.2d 677.

If the employer succeeds in asserting a legitimate, nondiscriminatory reason as justification for his actions, the complaining employee must then be afforded a fair opportunity to show that the employer's stated reasons for his actions were in fact pretextual.

> " * * * [R]espondent must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." 411 U.S. 805, 93 S.Ct. 1826, 36 L.Ed.2d 680.

■ Thus, upon a prima facie showing by the plaintiff, there is a shift, but not in the ultimate burden of proof. Only the burden of going forward with the evidence shifts to the defendant. By the great weight of authority, once the defendant comes forward with sufficient, relevant, and proper rebuttal evidence, the plaintiff must then bear the ultimate burden of persuasion by a preponderance of the evidence. *Causey v. Ford Motor Co.,* 516 F.2d 416 (5 Cir. 1975); *Bittar v. Air Canada,* 512 F.2d 582 (5 Cir. 1975); *Richard v. McDonnell Douglas Corp.,* 395 F.Supp. 1363 (E.D.Mo.1975); *Meier v. Evansville-Vanderburgh School Corp.,* 416 F.Supp. 748 (S.D.Ind.1975). This shift in the burden of going forward is also applied by the Federal courts in cases brought under the Equal Pay Act. *Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

■ The requirements of a proper prima facie case vary from case to case and with each set of differing factual circumstances. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, note 13, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677. All that plaintiff needs to show in this kind of case are the bare essentials of unequal treatment based on race, color, creed, national origin, or sex. In order to establish a prima facie case under the Equal Pay Act, the plaintiff must show that—

> " * * * an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of

which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' " *Corning Glass Works v. Brennan*, 417 U.S. 195, 94 S.Ct. 2228, 41 L.Ed.2d 10.

See, also, *Ridgway v. United Hospitals-Miller Div.*, 563 F.2d 923 (8 Cir. 1977).

■ Plaintiff in the case at bar did establish a sufficient prima facie case. She set forth sufficient evidence that she received less pay than her male counterpart for equal work done under equal working conditions. Because the trial court's conclusions of law do not reflect the shifting burdens of going forward, we are remanding the case for the taking of further evidence.

■ 2. *Defendant's Rebuttal Evidence.* Once the plaintiff has shown her prima facie case, the question remains whether the defendant has met its burden of going forward with sufficient proper, admissible, and relevant evidence to rebut the plaintiff's prima facie case. We find that Associates failed in this burden in the following material respects:

■ a. *Different Jobs.* Associates has attempted to justify the higher wages paid to Drake by trying to prove that his job was actually more extensive than that of the plaintiff. Plaintiff, on the other hand, contends that she performed essentially the same duties as Drake but received less pay for them.

Federal case law is helpful in interpreting this issue. The courts, in deciding similar issues under the Equal Pay Act and Title VII of the Civil Rights Act, have developed the "equal effort" doctrine to test the validity of differing pay rates given for allegedly different jobs. See, *Hodgson v. Brookhaven General Hospital*, 436 F.2d 719 (5 Cir. 1970). As the doctrine is emerging, the courts test whether one job is different from another or whether one job requires substantially more work and effort by using the following criteria:

" * * * [J]obs do not entail equal effort, even though they entail most of the same routine duties, if the more highly paid job involves additional tasks which (1) require extra effort, (2) consume a significant amount of time of all those whose pay differentials are to be justified in terms of them, and (3) are of an economic value commensurate with the pay differential." 436 F.2d 725.

However, jobs are equal, even if one requires additional duties, if those duties are only minor or incidental.

" * * * 'Application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance.' 29 CFR 800.121. Equal does not mean identical, and insubstantial differences in the skill, effort and responsibility requirements of particular jobs should be ignored (29 CFR 800.120, 800.122). The job requirements should be viewed as a whole." *Wirtz v. Basic Inc.*, 256 F.Supp. 786, 790 (D.Nev.1966).

In the instant case, Associates contends that Drake performed a variety of additional duties. Plaintiff maintains, however, that any additional duties actually performed by Drake were insubstantial, consumed a minimal amount of time, and were incidental to the actually assigned duties of his position.

The following extra duties were allegedly performed by Drake:

(1) *Assisting the property manager.* There is no indication, however, of what this entailed. Drake himself testified, "I did a few things for Pete [the property manager] but that was done strictly on a personal basis."

(2) *Performing some construction inspections.* This apparently consisted of looking around the apartments to determine whether the door knobs had been put on and so forth. Drake testified as follows:

"Q Did you ever make any construction inspections at all?

"A No, nothing as far as construction is concerned.

"Q Well, you know what I mean by construction inspection? A report on what apartments are—what

apartment needs a little bit more work still to do on it to get it completed and such needs a doorknob and—

"A (Interposing) *That's part of the job if you're showing apartments.* In other words, if the apartment is ready to be shown and they come back and say that a door is off its hinges or a bathtub is bad, naturally you've got to report that so it's taken care of." (Italics supplied.)

(3) *Performing security checks at night.* The only testimony concerning this came from Dybsjord. Drake himself was not asked if he performed security checks. Dybsjord testified:

" * * * He ran security checks at night; many times he would tell me that Construction had left certain fire doors open, he had closed them when he would go down through the garage; * * *."

This testimony suggests that these "security checks" involved little or no particular effort or time. Furthermore, it appears that these checks were not a formal part of his job, and he was never required to perform them.

(4) *Cleaning model apartments.* Drake testified that he did clean the model apartments for Associates; however, he stated that he received extra compensation for that job.

(5) *Communicating information to the management.* Scott Godin, one of the partners of Associates, testified:

"Mr. Drake was employed on the project as a rental person, he was the guy that I saw more often than not. He was the one who conducted the—I guess you'd call it the 'miniatures,' helped me show the project to the people who were with me. He's the one I solicited information about, how were the rentals going. He from time to time relayed information to me about the project, about the construction process and what have you."

Here, again, there is no indication that this took any significant amount of time or involved any more work than the duties which the job already entailed.

Plaintiff's contention that the evidence of Drake's extra duties is insufficient to justify the wage differential has a significant amount of support in the record. Whatever Drake did as extra work, there is no clear evidence that it took any significant extra effort or time. In fact, the testimony reflects just the opposite; the extra duties performed by Drake were either undertaken with the expectation of compensation above what he ordinarily received or were incidental to the job of renting apartments and required little or no additional effort. Furthermore, the trial judge's findings of fact on this point do not support the conclusion of nondiscrimination because they fail to state that Drake's extra duties were in any way significantly different from those of the plaintiff. The court in *Hodgson v. Brookhaven General Hospital,* 436 F.2d 719, 725, stated:

" * * * Employers may not be permitted to frustrate the purposes of the [Equal Pay] Act by calling for extra effort only occasionally, or only from one or two male employees, or by paying males substantially more than females for the performance of tasks which command a low rate of pay when performed full time by other personnel in the same establishment."

We find that the extra duties involved in Drake's job were insufficient as a matter of law to rebut plaintiff's prima facie case.

b. *Job Performance.* Associates further contends that Drake had a much greater interest in the job and more enthusiasm for it, and his overall job performance was superior to that of the plaintiff, thus justifying his higher starting wage. However, the record shows that both plaintiff and Drake, in fact, rented a similar number of units. Associates has not satisfied the burden of proof required to rebut the prima facie case on that issue. In any case, enthusiasm for the job could not justify the initial pay disparity.

c. *Prior Work Experience and Qualifications.* Associates attempted to prove, and the judge, as the trier of fact, found that

plaintiff did not have the rental experience or background of Drake. The trial court found that plaintiff's ability to become an efficient, effective rental agent at a new and difficult project was unknown. Drake was regarded by Dybsjord as one of the very best salespersons and rental agents hired by Associates and as having better qualifications and preemployment experience than plaintiff.

The issue presented is whether the prior work experience of Drake justifies a higher starting wage for him than for plaintiff. Although authorities are in conflict on this issue, the majority of courts, depending on the specific facts involved, allow prior work experience, education, and proven ability as permissible criteria for wage differentials between employees.

In *Equal Employment Opportunity Comm. v. N. Y. Times Broadcasting Service, Inc.*, 542 F.2d 356 (6 Cir. 1976), in which discrimination in wages was alleged, the court, reversing the lower court on other grounds, justified the higher wages of certain male employees over certain female employees by stating:

"A careful analysis of the evidence presented at trial, however, indicates that the starting salaries paid to new employees bore a direct relationship to the prior broadcast experience they possessed at the time of hire. The evidence shows that the females hired at lower salaries uniformly had less broadcast experience than their male counterparts." 542 F.2d 359.

Furthermore, the Supreme Court of the United States, in a case involving job discrimination under Title VII of the Civil Rights Act, has stated:

" * * * Congress has not commanded that the less qualified be preferred over the better qualified simply because of minority origins. Far from disparag-ing job qualifications as such, Congress has made such qualifications the controlling factor, so that race, religion, nationality, and sex become irrelevant." *Griggs v. Duke Power Co.*, 401 U.S. 424, 436, 91 S.Ct. 849, 856, 28 L.Ed.2d 158, 167 (1971).

Notwithstanding the trial court's finding that Drake had greater rental experience and better qualifications than plaintiff and that Drake was hired to eventually work his way into a management position,[2] we must remand the case for additional evidence and findings on this issue.

Because we hold that the other reasons advanced for the initial pay disparity are inadequate to overcome plaintiff's prima facie case, we are not convinced that the differences in experience, reflected in the record, are adequate, under the proper legal standards, to rebut the prima facie case.

The proper standard is set forth in *Peltier v. City of Fargo*, 533 F.2d 374, 377 (8 Cir. 1976), as follows:

"The crucial question * * * is not whether one sex possesses additional training or skills, but whether the nature of the duties *actually performed* require or utilize those additional skills." (Italics supplied.)

On remand, Associates must be given the opportunity to show that the differences in qualifications were sufficient to justify an initial wage differential, and plaintiff must be given an opportunity to offer any rebuttal evidence she deems appropriate. The trial court must then determine whether the differences were relevant, whether they were significant, and whether, under the proper standard, they justified the wage differential.[3]

3. *Justification for Termination.* The employer must show valid cause for discharge of an employee, and mere intention to resign on the part of an employee by reason of alleged sex discrimina-

---

2. Merely being hired to "work one's way up" in a company is not the kind of bona fide management training program which justifies wage inequality. *Hodgson v. Fairmont Supply Co.*, 454 F.2d 490, 498 (4 Cir. 1972).

3. Because one of Dybsjord's original justifications for the initial wage disparity was Drake's status as a "breadwinner," the trial court should carefully scrutinize the alleged differences in experience.

tion in employment practices does not bar the employee from full recovery. Specific findings must be made on the reasons for plaintiff's resignation and on the question of whether she was terminated for cause.[4]

The trial court must also make findings on the issue of damages.

The case is therefore remanded to the trial court for specific determinations on the following issues:

(1) Was the difference in background and experience between plaintiff and Drake sufficient to justify unequal pay?

(2) Were there grounds to discharge the plaintiff, or did plaintiff resign because of the alleged discrimination?

(3) Damages.

Reversed and remanded.

OTIS, J., took no part in the consideration or decision of this case.

---

**4.** A resignation which is caused by illegal discrimination is a constructive discharge. Cf. *Young v. Southwestern Savings and Loan Assn.*, 509 F.2d 140, 143 (5 Cir. 1975). If plaintiff succeeds in rebutting Associates' reasons given for her termination, she may be entitled to additional damages beyond the date of her termination.