**Kathleen A. BOWEN, Appellant,**

v.

**SUPERWOOD CORPORATION, et al., Respondents.**

**No. CX–86–441.**

Court of Appeals of Minnesota.

Nov. 10, 1986.
Review Denied Jan. 2, 1987.

Barbara M. Louisell, Duluth, for appellant.

Steven W. Schneider, Duluth, for respondents.

Heard, considered, and decided by RANDALL, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

RANDALL, Judge.

Appellant, Kathleen Bowen, filed a verified charge with the Human Rights Commission pursuant to Minn.Stat. § 363.03, subd. 1 (1984) of the Minnesota Human Rights Act. She alleged that her employer, respondent Superwood Corporation, discriminated against her on the basis of gender by paying her less than a male employee whom she alleged had previously performed the same job. The Human Rights Commission determined that no probable cause existed to substantiate the charges.

Despite the Commission's ruling, appellant brought a district court action against respondent alleging violations under the Minnesota Human Rights Act, as well as wrongful discharge, breach of contract, and fraud. A jury, sitting as trier of fact on the fraud and contract claims and as an advisory jury on the Human Rights Act claim, found that respondent had not discriminated against appellant on the basis of sex, had not breached its employment contract with appellant, had not wrongfully discharged appellant, and had not committed fraud.

Appellant untimely moved for judgment notwithstanding the verdict, amended findings, or a new trial. Appellant also moved the court, based on Minn.R.Civ.P. 52.01, for findings on the Human Rights Act verdict. In its original order, the court failed to make these findings. Respondent moved the court, based on Minn.R.Civ.P. 60.01, to make these findings. The court denied appellant's motions for JNOV, amended findings, or a new trial, ruling that because appellant's motions were untimely, the court did not have jurisdiction to rule on them. The court granted respondent's motion and made findings on the Human Rights advisory verdict *nunc pro tunc* to the date of the order. Bowen timely appeals from that judgment. We affirm.

## FACTS

On August 18, 1975, respondent corporation hired appellant as a keypunch operator. At trial appellant testified that her educational background included a year of high school accounting and some accounting courses at Duluth Vocational Technical Institute. She had experience doing bookkeeping for other employers before coming to work for respondent. At Superwood her initial duties were keypunching and payroll bookkeeping. Her starting salary was $725 per month.

Respondent hired John Rich as a part-time accounts payable clerk in June 1976, while he was in college. His duties included coding invoices, computing taxes, compiling data for corporate records, and reconciling bank accounts. He was supervised by respondent's chief cost accountant, Al Carlson.

In September 1977, after completing his B.A. in business administration accounting, Rich began working full time for respondent. His duties were expanded to include cost accounting and extending the annual

budget. He was also expected to fill in for Carlson when Carlson was out. During the course of a deposition given in 1984, respondent's assistant treasurer, James Simmons, testified that he was supposed to teach Rich to do respondent's financial statements. In a correction issued after he gave the deposition and again later at trial, Simmons admitted that he never taught Rich to do the financial statements.

At trial appellant relied heavily on her own observations as evidence of duties Rich performed in the course of his employment. Appellant was attempting to show that she assumed all of Rich's duties after he left.[1]

After Rich left respondent corporation in November 1978, appellant approached Fred Burnes, corporate treasurer and vice president of accounting, and asked if she could assume Rich's duties. Burnes agreed to let her assume some of Rich's duties on a provisional basis. No one was hired specifically to replace Rich. Appellant contended at trial that she replaced Rich. Appellant alleged that, in addition to taking over all of Rich's duties, she continued to do the duties for which she was initially hired. Burnes disputed appellant's contention and alleged that appellant took over only Rich's accounts payable duties. Burnes testified that appellant could not have extended the budget because the 1979 budget extension was completed before Rich left and the 1980 budget extension was completed after appellant was fired.

Appellant testified that she moved to Rich's desk when he left, and that she used his equipment and ledgers. When Rich left respondent's employ in November 1978, he was earning $1000 per month and appellant was earning $725 per month. In December 1978, Burnes gave appellant a $50 per month raise. In February 1979, respondent raised appellant's salary $75 per month as part of an annual raise given to all of respondent's employees. In addition to the annual raise, respondent raised appellant's salary an additional $25 to compensate her for her assumption of the additional work. At the time she left respondent's employ, appellant's monthly pay totalled $875.

In February 1979 Burnes told appellant she could have the accounts payable duties permanently. She asked Burnes to pay her the same salary as it had paid Rich, $1000 per month. Appellant alleged that Burnes responded:

> that because I was a female and it was an old-fashioned company, that I would have to wait a few years or more to get the same pay as John Rich.

Burnes denied making this statement. Burnes testified that appellant told him she was looking for another job and that once she found another job, she was going to quit her job with respondent.

Appellant testified that she began looking for other jobs after Burnes told her she had "lost all opportunities for advancement" because she had pressed the salary issue. In July, Burnes hired a replacement for appellant and then fired appellant on August 2, 1979. After appellant left Superwood, she eventually took another job at lower pay.

## ISSUE

Does the evidence support the court's conclusion that respondent did not discriminate against appellant on the basis of gender?

## ANALYSIS

█ Appellant's motion for a new trial, amended findings, and JNOV was not timely. She made no post-trial motion relative to the Human Rights Act findings once the findings were made. On appeal, our scope of review is limited to ascertaining whether the evidence sustains the findings of fact and whether the findings sustain the conclusions of law and the judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). The jury's verdict will be sustained if supported by the evi-

---

1. Respondent corporation did not have a written employment policy detailing either Rich's or appellant's duties during the times in question, and both parties relied on oral testimony.

dence. *Hair v. Miller,* 374 N.W.2d 223, 225 (Minn.Ct.App.1985). Moreover, "[w]e will not review issues raised on appeal where the trial court was not given the opportunity to correct any error." *Cogswell v. Eichenberger,* 371 N.W.2d 561, 562–63 (Minn.Ct.App.1985).

Appellant argues that *Sigurdson v. Isanti County,* 386 N.W.2d 715 (Minn.1986) and *Danz v. Jones,* 263 N.W.2d 395 (Minn. 1978) require the court to make certain express findings pertaining to her Human Rights Act claims, and that the court failed to make these findings. These specific findings are based on the holding of a federal court case, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[2] Appellant asks this court to reverse the trial court and enter judgment for her using the *McDonnell Douglas* analysis. In her post-trial motion, appellant failed to move the trial court to make the *McDonnell Douglas* findings of fact.

*McDonnell Douglas* provides a three-part test to determine whether unlawful discrimination has occurred. This test involves shifting the burden of production of evidence between the parties, and "consists of prima facie case, an answer, and a rebuttal." *Sigurdson,* 386 N.W.2d at 720.

If the plaintiff successfully establishes a prima facie case, *McDonnell Douglas* creates a presumption that the employer unlawfully discriminated and the "burden of *production* shifts to the employer to present evidence of some legitimate, nondiscriminatory reason for its actions." *Id.* (emphasis added).

■ To prove a prima facie case, all appellant need do is prove by a preponderance of the evidence the essentials of unequal treatment based on sex. *Danz,* 263 N.W.2d at 399. This involves showing that

an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions.'

*Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974), quoted in *Danz,* 263 N.W.2d at 399–400. The plaintiff can present her prima facie case of discrimination either by direct or circumstantial evidence. *Sigurdson,* 386 N.W.2d at 721. Direct evidence of discrimination, for example, is where an employer announces that he will not consider females for positions. *Id.* at 720. However,

[e]qual does not mean identical, and insubstantial differences in the skill, effort and responsibility requirements of particular jobs should be ignored. The job requirements should be viewed as a whole.

*Danz,* 263 N.W.2d at 400.

Appellant claimed she proved her case against respondent by direct evidence. She based her claim on statements Fred Burnes allegedly made to her. After hearing the evidence, the jury made the following relevant findings:

(1) Did Kathleen Ann Bowen perform substantially the same work as John Rich?

Yes___

No _X_

(3) Did Superwood Corporation discriminate against Kathleen Ann Bowen with respect to privileges of employment because of her sex?

Yes___

No _X_

The court's findings state:

5. In November of 1978 John Rich, a male, held a position as Accounts Payable clerk at a salary of $1000 per month.

---

**2.** *McDonnell Douglas* applies to cases of race discrimination arising under Title VII of the 1964 Civil Rights Act. The Minnesota Supreme Court, in *Danz v. Jones* held that because Minnesota's Human Rights Act, Minn.Stat. § 363, is modeled after Title VII, Minnesota courts will use principles developed under Title VII court decisions to construct § 363. *Danz,* 263 N.W.2d at 399. *Danz* held that the *McDonnell Douglas* analysis applies to sex discrimination cases brought under § 363.

Upon his resignation Plaintiff began to assume some of the duties of John Rich but not all of his duties, including acting in a supervisory capacity and devoting approximately 50 percent of his time to cost accounting. Duties not performed by Plaintiff.

6. Plaintiff continued to receive annual raises of approximately ten percent.

7. That Plaintiff * * * did not perform substantially the same work as did John Rich.

8. That Plaintiff had several discussions with Defendant Burnes in the latter part of the year 1978 and in the early part of 1979 in which Plaintiff was seeking to obtain pay raises. That Plaintiff expressed dissatisfaction of her $100 pay raise in 1979 and was informed by Defendant Burnes that if she was not satisfied she could leave her employment. Subsequent thereto Plaintiff sent in resumes and had two job interviews.

9. That on June 28, 1979, Plaintiff and Defendant Burnes discussed Plaintiff's assisting with the training of her replacement for her position.

10. That on or about August 1, 1979, Plaintiff was discharged from her employment.

11. That Defendant Superwood Corporation did not discriminate against Plaintiff Kathleen Ann Bowen with respect to privileges of employment of her sex.

While the court implicitly concluded that appellant did not prove her prima facie case, it did not expressly state "appellant failed to prove a prima facie case." Appellant argues that the trial court's findings are erroneous because they do not contain this finding, nor do they discuss "the shifting burdens of going forward," as required by *Danz.*

Because appellant failed to make timely post-trial motions, our scope of review is limited to ascertaining whether the findings of fact are supported by the evidence, and whether the conclusions of law are supported by the findings of fact. We review the evidence to ascertain whether the evidence supports the court's findings

that respondent did not discriminate against appellant on the basis of her sex. The evidence does support the court's findings and supports the conclusion that appellant did not prove a prima facie case of sex discrimination.

■ Appellant's claim of sex discrimination arises from her contentions that Burnes promised appellant salary equal to Rich when appellant completed a probationary period, and that once appellant asked for this raise, Burnes told her she would have to wait for it because she was a woman and respondent was "an old fashioned company." Fred Burnes denied under oath that he promised appellant the same salary that Rich was paid. He also strenuously denied telling appellant that she could not hope to make the same wages as Rich because she was a woman. The oral testimony of appellant and Burnes consisting of her claim and Burnes' denial was the only evidence offered on this issue. The jury judged the credibility of the witnesses and believed respondent's witnesses. We have no basis to disturb that jury finding.

Testimony offered by respondent was consistent with the finding that appellant took over only the clerical aspects of Rich's job, and did not do his accounting work which required additional training. Respondent agrees that when Rich left its employ, appellant sought the opportunity to take over some of his duties, but denies that appellant was given everything of Rich's job that she testified she was given. Respondent denies that appellant is qualified to do cost accounting, and denies that appellant did any cost accounting. Respondent's witnesses testified that employees working on cost accounting records are required to have a college degree. Appellant does not have that degree. Appellant offered no evidence to show that she had done cost accounting.

Appellant's testimony that she completely took over Rich's job was based solely on her observation of Rich's work, and was refuted by testimony of respondent's witnesses. Respondent also refuted appel-

lant's claims that she extended the annual budget by showing that the 1979 budget extension was done before appellant took over Rich's duties and the 1980 budget extension was done after appellant left respondent's employ.

We hold that the evidence supports the finding that appellant did not prove that she was discriminated against on the basis of her sex. Under the *McDonnell Douglas* analysis, this is failure to prove a prima facie case. Therefore, we need not address the final two steps of the *McDonnell Douglas* analysis.

Following oral argument, appellant submitted a brief answering a question posed by one of the panel judges. This submission was not requested by the panel. By written documents, respondent moved the special term panel to strike appellant's submitted materials and also requested attorney's fees based on a claim of impropriety.

Minn.R.Civ.App.P. 128.02, subd. 4, states,

No further briefs [beyond appellant's brief, respondent's brief, and appellant's reply brief] may be filed except with leave of the appellate court.

Appellant did not formally request leave to file an additional brief. Her memorandum simply expanded on her oral argument, and was not requested by the court. We did not consider any documents filed after oral argument in reaching our decision, but do not award attorney fees to respondent. We find appellant's action in submitting additional materials to be inadvertent, not improper.

## DECISION

The trial court's finding that respondent corporation did not violate the Human Rights Act by discriminating against appellant on the basis of her gender is supported by the evidence.

Affirmed.