**Bryan CORRELL, D.D.S., Respondent,**

v.

**DISTINCTIVE DENTAL SERVICES, P.A., Appellant.**

No. C7–98–2251.

Court of Appeals of Minnesota.

May 18, 1999.

Review Granted July 28, 1999.

William J. Egan, William J. Egan & Associates, PLC, Edina, for respondent.

Duane G. Johnson, Duane G. Johnson, P.A., Minneapolis; and John D. Hagen, Jr., Minneapolis, for appellant.

Considered and decided by TOUSSAINT, Chief Judge, HUSPENI, Judge and HOLTAN, Judge.*

## OPINION

HUSPENI **, Judge

Appellant Distinctive Dental Services, P.A. (DDS) appeals the district court's denial of its motion to compel arbitration of respondent Bryan Correll's marital status discrimination claim. The district court interpreted Minn.Stat. § 363.11 (1998) to preclude arbitration of a pending discrimination claim pursuant to Minn.Stat. § 363.06 (1998), and it concluded that neither the Federal Arbitration Act nor the Minnesota Uniform Arbitration Act compels arbitration of Correll's claim. We disagree and reverse the decision of the district court.

## FACTS

On February 4, 1994, DDS entered into a Dentist Employment Agreement with Correll. The agreement provides that any controversy or claim arising out of it shall be settled by arbitration in accordance with the rules of the American Arbitration Association (AAA). The agreement also provides that during the period of Correll's employment, he shall not engage in any other business activity, directly or indirectly, that is similar to the business activity of DDS, within seven miles of DDS's offices.

Subsequent to the execution of the agreement, Correll's wife, who is also a dentist, joined a competing dental practice within seven miles of DDS's offices. On September 9, 1994, DDS terminated Correll for breach of the non-compete clause of the agreement.

On September 7, 1995, Correll filed a charge of marital status discrimination against DDS with the Minnesota Department of Human Rights and a hearing was ordered before an administrative law judge. On May 5, 1998, DDS filed a demand for arbitration in accordance with the rules of the AAA.

On June 17, 1998, Correll filed a petition for a stay of arbitration proceedings in district court and DDS answered. On November 6, 1998, the district court granted Correll's motion to stay arbitration proceedings and denied DDS's motion to compel arbitration proceedings. DDS appeals.

## ISSUE

Did the district court err in denying appellant's motion to compel arbitration pursuant to the Minnesota Human Rights Act?

## ANALYSIS

■ Because the district court's denial of DDS's motion to compel arbitration proceedings was based on an interpretation of statutory law, we review de novo the district court's decision. *In re Senty–Haugen*, 583 N.W.2d 266, 268 (Minn.1998) (citing de novo standard of review for questions of statutory interpretation).

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

** Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

■ We conduct a two-step inquiry to determine the arbitrability of a dispute. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985). First, we decide whether the parties' agreement to arbitrate encompassed the statutory issues in dispute. *Id.* Having determined that the issues are included in the agreement, we then consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* Because the issue of whether the parties agreed to arbitrate Correll's marital status discrimination claim is not in dispute on appeal, we go directly to the second inquiry to determine whether Correll's claim is "within a class of claims as to which agreements to arbitrate are held unenforceable." *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 799 (Minn.1995) (citation omitted).

■ DDS argues that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16 (1998), and the Minnesota Uniform Arbitration Act (MUAA), Minn.Stat. §§ 572.08–.30 (1998), require Correll to submit his claim to arbitration. Correll, in contrast, contends that the Minnesota Human Rights Act (MHRA), Minn.Stat. §§ 363.01–.20 (1998), is an external legal constraint that precludes arbitration despite the parties' agreement. Specifically, he argues that Minn.Stat. § 363.11 precludes arbitration of claims pending in proceedings authorized under the MHRA. This section provides that as to acts declared unfair by the MHRA, including marital status discrimination, "the procedure herein provided shall, while pending, be exclusive." *Id.* Correll, in effect, argues that this provision voids prospective choice of forum agreements, such as the arbitration agreement at issue here, while a claim is pending under the MHRA.

Minnesota appellate courts have not yet addressed the question of whether the exclusivity provision of the MHRA voids a contractual provision such as the one present here. Caselaw indicates that the FAA would govern if the contract involved interstate commerce. 9 U.S.C. § 2 (indicating that contracts and transactions must involve commerce in order for the FAA to apply); *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272, 115 S.Ct. 834, 838, 130 L.Ed.2d 753 (1995) (holding that *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) "concluded that the [FAA] preempts state law; and it held that state courts cannot apply state statutes that invalidate arbitration agreements") (citation omitted); *Southland*, 465 U.S. at 10, 104 S.Ct. at 858 (holding that in enacting the FAA, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration"). Conversely, we conclude that if interstate commerce is not involved, the MUAA applies.

Unfortunately, the parties did not raise the interstate commerce question before the district court. Had they done so, and had the district court concluded that commerce was involved, it is likely that the district court would have recognized the importance of the supreme court's decision in *Johnson* and compelled arbitration.[1] While it is no surprise that Correll argues on appeal that there is no involvement of

---

1. In *Johnson*, the involvement of commerce was not questioned and the supreme court applied the FAA. 530 N.W.2d 790. At issue in that case was the effect plaintiff's written agreement with her employer to arbitrate disputes had upon her attempt to bring an age and gender discrimination claim under the MHRA. The court held that gender discrimination claims are to be treated the same as age discrimination claims under the Age Discrimination in Employment Act (ADEA), which the United Stated Supreme Court had previously held were subject to compulsory arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Had the district court here determined that the FAA applied to the parties' contract, it would have found it difficult to distinguish between the marital status claim here and the gender and age discrimination claims in *Johnson*.

interstate commerce and DDS argues that there is, we do not address that contested question. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). We shall assume for the sake of our analysis that interstate commerce was not involved, and decide the issue presented under state law, as the district court did.

The MUAA provides in pertinent part:
[A] provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. * * * [The MUAA also applies] to arbitration agreements between employers and employees or between their respective representatives * * *.

Minn.Stat. § 572.08 (1998).

Deciding whether Correll's marital status discrimination claim is to be heard in an arbitration forum or a forum provided for by the MHRA requires that we address and attempt to harmonize the MHRA and the MUAA.[2] *See In re Appeal of Crow Wing County Attorney*, 552 N.W.2d 278, 280 (Minn.App.1996) (holding that to the extent possible, laws are to be construed together to give effect to both provisions), *review denied* (Minn. Oct. 29, 1996). We address the FAA only to the extent that cases decided under that Act provide guidance.

We conclude that the exclusivity provision of the MHRA does not void the prospective choice of forum provision in the parties' agreement; a provision directing that disputes would be arbitrated. To hold otherwise would require this court to read into the MHRA exclusivity provision a sweeping constriction on the ability of the parties to freely contract. *See Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3354–55 (stating that having made the bargain to arbitrate, parties should be held to it because nothing prevents a party from excluding statutory claims from the scope of their arbitration agreement). We decline to do so. We do not believe that the legislature intended that the exclusivity clause of the MHRA be construed so broadly as to override language in the parties' contract that "[a]ny controversy or claim arising out of [the contract] shall be settled by arbitration."

First, we note that the exclusivity provision contained in Minn.Stat. § 363.11 has been traditionally interpreted by the supreme court and the court of appeals as barring the pursuit of *additional remedies* for the same act that forms the basis of a pending MHRA claim. *Williams v. St. Paul Ramsey Med. Ctr., Inc.*, 551 N.W.2d 483, 485–86 (Minn.1996) (barring claim under Whistleblower Act where plaintiff alleged same facts and sought redress for same discrimination as asserted in MHRA claim); *Sullivan v. Spot Weld, Inc.*, 560 N.W.2d 712, 717 (Minn.App.1997) (barring negligent supervision claim that alleged discriminatory practices, injuries, and damages identical with those in plaintiff's

2. DDS asks this court to apply Minn.Stat. § 645.26, subd. 4 (1998), which provides that "[w]hen the provisions of two or more laws passed at different sessions of the legislature are irreconcilable," the later enacted law shall prevail (the MUAA was enacted two years after the MHRA's exclusivity provision). Correll argues that if this court finds the MHRA and MUAA irreconcilable, we ought to apply Minn.Stat. § 645.26, subd. 1 (1998), which provides that when interpreting statutes a "special provision shall prevail and shall be construed as an exception to [a] general provision." We reject both of these arguments because we believe the statutes can be reconciled. We also reject Correll's argument that because the MHRA only bars arbitration during the pendency of the MHRA proceedings, DDS would be free to pursue arbitration pursuant to MUAA after MHRA proceedings are concluded. Such sequential processes would not meet the goals of the MUAA. *See Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 562 (Minn.1996) (stating that arbitration is a speedy and relatively inexpensive way to resolve controversies). Further, there is merit to DDS's observation that after a final determination on the merits in either forum, the doctrine of res judicata would likely be raised in an attempt to bar proceedings in the other forum.

MHRA claim), *review denied* (Minn. Apr. 27, 1997). Section 363.11 has never been read to void an agreement to submit to an *alternative forum* not provided for under the MHRA.

■ Further, in construing the MHRA, strong weight is given to federal court interpretations of Title VII claims because the MHRA was modeled on Title VII. *Danz v. Jones*, 263 N.W.2d 395, 398–99 (Minn.1978); *Bowen v. Superwood Corp.*, 395 N.W.2d 738, 741 n. 2 (Minn.App.1986) ("Minnesota courts will use principles developed under Title VII court decisions to construct [the MHRA].") (citation omitted), *review denied* (Minn. Jan. 2, 1987). This court has stated in the past that

> we see no reason to have a different rule for state judicial remedies available under the [MHRA] when that statute appears to be modeled after Title VII and the purposes of the two statutes are the same.

*Anderson v. Dean Witter Reynolds, Inc.*, 449 N.W.2d 468, 469 (Minn.App.1989) (citations omitted), *review denied* (Minn. Mar. 8, 1990).[3] Especially significant are those cases construing the interrelationship between the FAA and Title VII claims, a relationship strongly analogous to the relationship between the MUAA and the MHRA.

The Minnesota Supreme Court has agreed with several federal circuits in holding that under *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), Title VII claims are subject to compulsory arbitration agreements. *Johnson*, 530 N.W.2d at 800; *see Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 700 (11th Cir.

1992) (noting that subsequent to *Gilmer*, the Fifth, Sixth, and Ninth Circuits have held that Title VII claims are subject to compulsory arbitration agreements); *see also Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 837 (8th Cir.1997) (agreeing with post-*Gilmer* decisions that have held that Title VII claims are subject to arbitration agreements).

Further, Minnesota law is consistent with the policy of the FAA to favor arbitration. *Kennedy, Matthews, Landis, Healy & Pecora, Inc. v. Young*, 524 N.W.2d 752, 755 (Minn.App.1994); *Layne–Minnesota Co. v. Regents of Univ. of Minn.*, 266 Minn. 284, 288, 123 N.W.2d 371, 374 (1963) (providing the MUAA changed "the common law policy of judicial hostility toward arbitration to one favoring arbitration").

■ In light of Minnesota's strong public policy favoring arbitration agreements and the overwhelming recognition that Title VII claims are subject to consensual agreements to arbitrate, we believe unacceptable confusion would result from a determination that the MHRA exclusivity provision voids choice-of-forum agreements in non-interstate commerce contracts. Under such a determination, two classes of cases involving arbitration agreements would develop in Minnesota: (1) MHRA claims arising from contracts involving commerce, which would be subject to the FAA and mandatory arbitration; and (2) MHRA claims arising from non-interstate commerce contracts, to which the MUAA would apply and guarantee a forum provided for by the MHRA. Further, a determination that the exclusivity provision of the MHRA voids agree-

---

**3.** In *Anderson*, we relied on the Eighth Circuit's decision in *Swenson v. Management Recruiters Int'l, Inc.*, 858 F.2d 1304 (8th Cir. 1988), which exempted Title VII claims from compulsory arbitration agreements, to hold that an employee was not required to arbitrate her sex discrimination claims brought under the MHRA notwithstanding her agreement to arbitrate any disputes that arose with her employer. *Swenson* has since been over-

ruled by the United States Supreme Court. *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 838 (8th Cir.1997) (holding that Title VII claims are subject to arbitration because *Gilmer* overruled the *Swenson* holding). Accordingly, our holding in *Anderson* is also now abrogated. *See Johnson v. Piper Jaffray, Inc.*, 515 N.W.2d 752, 753–54 (Minn.App.1994), aff'd, 530 N.W.2d 790 (Minn.1995).

ments to arbitrate in contracts not involving interstate commerce would require a preliminary decision, often by non-lawyers, of whether a particular contract does or does not involve interstate commerce before assurance could be had that an arbitration agreement would be enforced. The creation of two classes of cases and cumbersome initial decision-making would serve neither of the parties to a contract containing an agreement to arbitrate disputes.

A final argument raised by Correll merits comment. He argues that the administrative setting, authorized by the MHRA for adjudicating MHRA claims, "provides a superior forum to private arbitration" because: (1) civil rights are at issue; and (2) the right to appeal is safeguarded in administrative proceedings. However,

> we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution.

*Mitsubishi*, 473 U.S. at 626–27, 105 S.Ct. at 3354; *see Gilmer*, 500 U.S. at 27–33, 111 S.Ct. at 1652–56 (discussing (1) how social policies underlying the ADEA will still be served if the court orders compulsory arbitration; (2) the adequacy of arbitration procedures; and (3) potential unequal bargaining power between employers and employees in making arbitration agreements).

■ We conclude that the due process concerns Correll raises have been substantially addressed by the United States Supreme Court when it observed that when a party agrees to arbitrate a statutory claim, it "does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3354. "It trades the

procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Id.* By entering into the contract with DDS, Correll did not relinquish any substantive rights; but he did agree to have disputes heard in an arbitral, not an administrative or a judicial, forum.[4]

### DECISION

Because we do not interpret Minn.Stat. § 363.11 as voiding prospective forum agreements, we reverse the district court's denial of DDS's motion to compel arbitration and order the parties to submit to arbitration in accordance with their consensual arbitration agreement.

**Reversed.**

4. Correll argues that even if he were compelled to arbitrate, the Minnesota Attorney General, who has agreed to prosecute his case, would not be precluded from proceeding in the administrative forum on his behalf.

We do not reach this issue, because there is nothing in the record to indicate that the attorney general would attempt to continue a proceeding in the administrative forum.