Kristin L. JOHNSON, Petitioner,
Appellant,

v.

PIPER JAFFRAY, INC., a Wholly Owned Subsidiary of Piper Jaffray Companies, Respondent.

No. C4–93–2270.

Supreme Court of Minnesota.

May 5, 1995.

Leslie Lyn Lienemann, Sue B. Stingley Law Offices, Minneapolis, for appellant.

Carol A. Peterson, Kathleen Sheehy, Sonja G. Lemmer, Dorsey & Whitney, Minneapolis, for respondent.

Richard L. Varco, Jr., St. Paul (for amicus curiae State of MN).

## OPINION

ANDERSON, Justice.

Plaintiff, Kristin Johnson, commenced this action against her former employer, Piper Jaffray, Inc., asserting state statutory age and gender discrimination claims under the Minnesota Human Rights Act and also asserting a defamation claim. Maintaining that Johnson's execution of a Uniform Application for Securities Registration required her to arbitrate her claims, Piper Jaffray moved for an order staying the action and for an order compelling Johnson to arbitrate. The district court denied Piper Jaffray's motions, concluding that the parties had not agreed to arbitrate. The Minnesota Court of Appeals reversed, holding that Johnson was required to arbitrate her claims against Piper Jaffray. Johnson appeals, advancing several arguments why she should not be required to submit her claims to compulsory arbitration. We conclude that Johnson must arbitrate all of her claims against Piper Jaffray, and we affirm.

On March 9, 1992, Piper Jaffray, Inc. hired Kristin Johnson, a 21-year-old female, as a corporate bond trader. Before being hired by Piper Jaffray, Johnson had attended The American University in Washington, D.C., had worked as a foreign account representative for the Austrian Laenderbank in Salz-

burg, Austria, and had worked as a commodity merchant for Cargill, Inc. in Kansas City, Missouri. To qualify for her new position at Piper Jaffray, Johnson was required to complete a "Uniform Application for Securities Industry Registration or Transfer," known as a "Form U–4." Johnson completed this Form U–4 on March 23, 1992. This Form U–4 contained a written agreement to arbitrate. Specifically, Item 23, paragraph number 5 provided:

I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgement [sic] in any court of competent jurisdiction.

Item 10 on Johnson's Form U–4 indicates that she applied "to be registered with" two self-regulating organizations: the National Association of Securities Dealers (NASD) and the New York Stock Exchange (NYSE).

On May 5, 1992, Piper Jaffray terminated Johnson's employment. As required by NASD rules, Piper Jaffray filed with the NASD a U–5 termination notice, which indicated Johnson had been terminated for "unsatisfactory performance." During the short duration of her employment, Johnson was never allowed to trade securities. On at least one occasion, Johnson complained that she felt that other employees did not treat her like a corporate bond trader, but instead treated her like a secretary.

On April 14, 1993, Johnson commenced this action against Piper Jaffray in Hennepin County District Court, claiming that Piper Jaffray had discriminated against her on the basis of both her age and her gender in violation of the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363.03, subd. 2 (1992). Johnson also alleged a defamation claim based on Piper Jaffray's filing of the U–5 termination notice.

Maintaining that the rules, constitutions, or by-laws of either the NASD or the NYSE required Johnson to arbitrate all of her claims, Piper Jaffray moved for an order staying the action and for an order compelling Johnson to arbitrate her claims. The district court denied Piper Jaffray's motions, concluding that the parties had not agreed to arbitrate Johnson's claims.

Piper Jaffray appealed, and the Minnesota Court of Appeals reversed, holding that Johnson's execution of the Form U–4, standing alone, required her to arbitrate her claims against Piper Jaffray. *Johnson v. Piper Jaffray, Inc.*, 515 N.W.2d 752, 755 (Minn.App.1994). The court also held that Johnson's claims under the MHRA were subject to compulsory arbitration. *Id.* at 754. Johnson appeals, advancing several arguments why her claims against Piper Jaffray are not subject to compulsory arbitration.

First, contrary to the general rule that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–9 (1988), governs agreements to arbitrate contained in a Form U–4, Johnson argues that the FAA's own provisions exclude from its purview the Form U–4 that she signed. Specifically, Johnson contends the Form U–4 that she signed constitutes a "contract of employment," excluded from the purview of the FAA by Section 1 of the FAA. Second, even if the FAA does apply, Johnson argues she is not required to arbitrate any of her claims because the relevant rules of the NASD and the NYSE, to which she agreed to be bound, do not require her to arbitrate her claims. Third, even if the relevant rules of the NASD and the NYSE purport to require her to arbitrate her claims, Johnson contends that discrimination claims brought under the MHRA are not subject to compulsory arbitration under the FAA because they are part of a class of claims not subject to arbitration. Fourth, Johnson argues that her agreement to arbitrate is not enforceable. Johnson specifically argues that general contract principles of enforceability remain applicable under the FAA, and generalized unequal bargaining power, being one of those principles, is sufficient to invalidate her agreement to arbitrate. Johnson further maintains that she should not be compelled to arbitrate her claims against Piper Jaffray because of alleged procedural deficiencies existing in the arbitration process. Johnson finally argues that her agreement to arbi-

trate her discrimination claims brought under the MHRA is unenforceable because the MHRA voids any agreement purporting to prospectively waive the right to a judicial forum for claims brought under the MHRA. Minn.Stat. §§ 363.031, 363.14 (1992). Johnson contends the MHRA's voiding provision is not pre-empted by the FAA.

## I.

■ Generally, the FAA governs the enforceability of agreements to arbitrate contained in a Uniform Application for Securities Industry Registration or Transfer, known as a Form U–4. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (applying FAA to enforce agreement to arbitrate contained in Form U–4). Section 1 of the FAA explicitly excludes certain employment contracts from the FAA's purview. That section provides in pertinent part:

> [N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C. § 1. Thus, if an agreement to arbitrate is contained in a "contract[ ] of employment" of one of the specified classes of workers, the FAA does not govern the arbitration agreement. Contrary to the general rule that the FAA governs agreements to arbitrate contained in a Form U–4, Johnson contends that the Form U–4, which she signed as an alleged condition of her employment, constitutes a contract of employment with Piper Jaffray, excluded from the purview of the FAA by Section 1.

■ In *Gilmer v. Interstate/Johnson Lane Corp.*, the Supreme Court expressly addressed and rejected this argument. Narrowly defining "contract of employment," the Court held that the Form U–4 is not a "contract of employment" within the meaning of Section 1 of the FAA. The Court reasoned as follows:

> Several *amici curiae* in support of Gilmer argue that [Section 1] excludes from the coverage of the FAA all "contracts of employment." * * * [I]t would be inappropriate to address the scope of the § 1

exclusion because the arbitration clause being enforced here is not contained in a contract of employment. * * * Rather, the arbitration clause at issue is in Gilmer's securities registration application, which is a contract with the securities exchanges, not with [his employer]. * * * [T]he exclusionary clause in § 1 of the FAA is inapplicable to arbitration clauses contained in such registration applications. * * * [W]e therefore hold that § 1's exclusionary clause does not apply to Gilmer's arbitration agreement. Consequently, we leave for another day the issue raised by *amici curiae.*

500 U.S. at 25 n. 2, 111 S.Ct. at 1651 n. 2. (citations omitted); *accord Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488 (10th Cir.1994) (citing *Gilmer* and holding the Section 1 exclusion from the FAA for contracts of employment does not apply to securities registration application); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 312 (6th Cir.1991) (holding *Gilmer* clearly forecloses the position that the securities registration application constitutes a contract of employment).

Notwithstanding *Gilmer*'s holding that a Form U–4 does not constitute a contract of employment within the meaning of Section 1, Johnson urges this court to conclude that the Form U–4 constitutes a contract of employment, asserting that the majority in *Gilmer* refused to decide this issue. But the majority in *Gilmer* did not refuse to decide this issue. In *Gilmer*, the issue "le[ft] for another day" was not whether the Form U–4 constitutes a "contract of employment" within the meaning of the exclusion contained in Section 1. Rather, the issue the majority did not decide was whether the exclusion contained in Section 1 of the FAA extends to *all* contracts of employment, even those entered into by classes of workers not specified in Section 1. Because the Supreme Court unequivocally concluded that a Form U–4 is not a contract of employment, it did not need to address the scope of the exclusion contained in Section 1. Similarly, we need not evaluate the scope of the exclusion contained in Section 1 because Johnson's contention that the Form U–4 constitutes a contract of employ-

ment fails at the threshold. Because the arbitration clause contained in the Form U–4 executed by Johnson is not part of her contract of employment with Piper Jaffray, it does not fall within the exclusion from arbitration contained in Section 1, and it remains within the purview of the FAA.

## II.

■■■■ Whether Johnson must submit her defamation claim and her age and gender discrimination claims to arbitration depends on whether the parties agreed to arbitrate the present dispute. 9 U.S.C. § 3. Determining whether a party has agreed to arbitrate a particular dispute is a matter of contract interpretation. As with the interpretation of any contract, we review *de novo* the district court's determination that the parties did not agree to submit the present dispute to arbitration. *See, e.g., Saari v. Smith Barney, Harris Upham & Co., Inc.,* 968 F.2d 877, 879 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 494, 121 L.Ed.2d 432; *Tays v. Covenant Life Ins. Co.,* 964 F.2d 501, 502 (5th Cir.1992). In evaluating whether the parties agreed to arbitrate the present dispute, we remain aware that we should resolve any doubts concerning the scope of arbitrable issues in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Johnson argues that she is not required to arbitrate any of her claims against Piper Jaffray because the arbitration agreement she signed does not require her to arbitrate her claims. Specifically, Johnson argues that the rules, by-laws, and constitutions of neither the NASD nor the NYSE, to which she agreed to be bound by signing the Form U–4, require her to arbitrate her claims.

The court of appeals held that the Form U–4, standing alone, required Johnson to arbitrate her claims, regardless of what the rules of the NASD and the NYSE provide. *Johnson,* 515 N.W.2d at 755. Focusing on the language contained in Item 23, para-graph number 2, the court of appeals concluded that Johnson submitted to the authority of the NASD and the NYSE while she underwent the registration process as a candidate for registration. Item 23, paragraph number 2 provides, in pertinent part:

> I apply for registration with the [NASD and the NYSE] and, in consideration of the jurisdictions and organizations receiving and considering my application, I submit to the authority of the [NASD and the NYSE] and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the [NASD and the NYSE] as they are or may be adopted or amended from time to time.

Rejecting Johnson's argument that the Form U–4 requires her to arbitrate her claims only if the rules of either the NASD or the NYSE require such claims be arbitrated, the court of appeals reasoned that the plain language of the Form U–4 requires an applicant for registration to arbitrate discrimination claims against her employer. *Johnson,* 515 N.W.2d at 755. Piper Jaffray adopts the same argument.

Both the court of appeals and Piper Jaffray rely on the unpublished decision of *Foley v. Presbyterian Ministers' Fund,* 1992 WL 63269 (E.D.Pa. March 19, 1992). Notwithstanding the plaintiff employee's failure to attain the status of "registered representative," the *Foley* court held that the NASD Code required the plaintiff to arbitrate his age discrimination claim because "[t]he undertakings contained in the Form U–4 were contingent on executing the form, not on becoming a registered dealer." *Id.*

■■■■ The court of appeals' decision, Piper Jaffray's position, and the *Foley* decision fail to recognize that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Tech., Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (internal quotation omitted). This axiom recognizes that arbitrators derive their authority to resolve dis-

putes only because the parties have agreed in advance to submit such grievances to arbitration. *Id.* at 648–49, 106 S.Ct. at 1418–19 (citation omitted).

██ The only agreement to arbitrate that Johnson actually executed was contained in Item 23, paragraph number 5 of the Form U–4. That provision provided, in pertinent part:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm * * * that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD or the NYSE] as may be amended from time to time * * *.

This provision does not, in and of itself, bind Johnson to arbitrate any particular dispute. Instead, it incorporates by reference the relevant rules, constitutional provisions, and by-laws of the NASD and the NYSE, thereby qualifying the agreement as to what claims must be arbitrated. Because the Form U–4 provides for arbitration only if the relevant rules, constitutional provisions, and by-laws of either the NASD or the NYSE require arbitration, we must evaluate the requirements of the NASD and the NYSE to determine what Johnson agreed to arbitrate.

Johnson contends that the Code of Arbitration Procedure of the National Association of Securities Dealers (NASD Code), in effect both at the time she executed her Form U–4 and at the time she filed her claims, did not require arbitration of employment disputes. Even if the NASD Code required arbitration of employment disputes, Johnson further contends that the NASD Code does not require arbitration of her claims because she is not a "person associated with a member" within the meaning of the relevant portions of the Code.

A. *The NASD Code requires arbitration of an employment dispute between a member and a person associated with a member.*

Prior to October 1, 1993, Part I, ¶ 3701, Section 1 of the NASD Code, specifying the

disputes eligible to be arbitrated, provided in pertinent part:

Matters Eligible for Submission

Sec. 1. This Code of Arbitration Procedure is prescribed * * * for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:

(1) between or among members;

(2) between or among members and public customers, or others; and

(3) between or among members, registered clearing agencies * * * and participants, pledgees or other persons using the facilities of a registered clearing agency * * *.

Part II, ¶ 3708, Section 8(a), specifying the parties whose disputes may be arbitrated, requires arbitration of all disputes within the scope of Section 1. Prior to October 1, 1993, Section 8(a) provided in pertinent part:

Sec. 8. (a) Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code * * *.

An amendment to Part I, ¶ 3701, Section 1 of the NASD Code, effective October 1, 1993, changed the language to explicitly authorize arbitration of employment disputes.[1] That section now reads, in pertinent part (with the added language underlined):

Matters Eligible for Submission

Sec. 1. This Code of Arbitration Procedure is prescribed * * * for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, *or arising out of the employment or termination of*

---

**1.** By the terms of the Form U–4, Johnson agreed to be bound by amendments to the NASD Code. Nevertheless, because Piper Jaffray terminated Johnson's employment and because Johnson filed her suit before the amendments' effective date, the Code as it existed before the amendments' effective date of October 1, 1993 governs whether Johnson must arbitrate her claims.

*employment of associated person(s) with any member * * ***

(1) between or among members;

(2) *between or among members and associated persons;*

(3) between or among members *or associated persons* and public customers, or others; and

(4) between or among members, registered clearing agencies * * * and participants, pledgees or other persons using the facilities of a registered clearing agency * * *.

58 Fed.Reg. 39,070 (1993); 58 Fed.Reg. 45,932 (1993). At the same time, Part II, ¶ 3708, Section 8(a) was also amended to require arbitration of any dispute "arising out of the employment or termination of employment of such associated person(s) with such member * * *." *Id.*

Viewing these 1993 amendments to the NASD Code without explanation might support the conclusion that employment disputes between members and persons associated with members were not subject to arbitration prior to October 1, 1993. The NASD explained, however, that the amendments were merely designed to clarify its long-held understanding that employment disputes are arbitrable under Section 8. 58 Fed.Reg. 39,071 (1993); *but see Kresock v. Bankers Trust Co.,* 21 F.3d 176, 178–79 (7th Cir.1994) (concluding that the amendments to the NASD Code were more than mere clarifications, and instead, the amendments are "structural changes in the Code that sweep into the realm of arbitration a whole new class of disputes"). Moreover, the NASD had expressed this understanding of the Code as early as 1987. *See* 52 Fed.Reg. 9232 (1987).

At least one court has concluded that employment disputes were not arbitrable under the NASD Code before October 1, 1993. In *Farrand v. Lutheran Brotherhood,* the Seventh Circuit concluded "that § 1 of the NASD's Code does not authorize, and § 8 therefore does not require, the arbitration of an employment dispute between a member of the NASD and one of the member's registered representatives." 993 F.2d 1253, 1255 (7th Cir.1993), *reh'g denied,* 993 F.2d 1255. Evaluating Part I, ¶ 3701, Section 1, the Sev-

enth Circuit concluded that the text following the colon establishes which matters are arbitrable. *Id.* at 1254. Thus, for example, the Seventh Circuit explained "§ 1(2) when read in conjunction with the body of the rule calls for arbitration of 'any dispute, claim or controversy arising out of or in connection with the business of any member of the Association ... between or among members and public customers, or others'." *Id.*

Rejecting an interpretation of "or others" as extending to all persons, the Seventh Circuit reasoned,

such a reading of "or others" would make all of the words after the colon surplus. What is the point of writing down a list of parties, only to sweep everything off the table with a comprehensive "or others"? Language of this kind in a list usually means "others" *similar to* preceding terms—here, perhaps, clients who for technical reasons cannot properly be called "public customers."

*Farrand,* 993 F.2d at 1254–55 (emphasis in original). Because a "person associated with a member" is not similar to the specified entities, a person associated with a member is not required to arbitrate her claims.

■ Although we agree with the Seventh Circuit that the phrase "or others" should not be read so broadly as to sweep everyone into its reach, we conclude that the *Farrand* court too restrictively interpreted Section 1's phrase "or others." *Farrand*'s restrictive construction "implicitly raises, but does not address or resolve, a troubling question: how can Section 8 of the Code, which explicitly presumes that 'persons associated with members' have arbitration rights under Section 1, be reconciled with Section 1, if—as *Farrand* by necessary implication, holds—Section 1 does not encompass arbitration claims by 'persons associated with members?'" *Strappes Group, Inc. v. A.H. Siedle,* 1993 WL 443926, at *4 (D.Mass. Nov. 22, 1993). To avoid rendering portions of Section 8 meaningless, we read the phrase "or others" to incorporate all the categories specifically identified in Section 8, including "persons associated with members." *Accord id.* Accordingly, we conclude that, even prior to

October 1, 1993, the NASD Code required arbitration of employment disputes between a member and a person associated with a member.[2]

B. *Johnson is a "person associated with a member" within the meaning of the NASD Code.*

Even though the NASD Code requires arbitration of employment disputes, Johnson argues the NASD Code does not require her to arbitrate any of her claims because she is not a "person associated with a member" within the meaning of the Code. Art. I, Section 1(m) of the NASD by-laws defines "person associated with a member" as:

[E]very sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member, whether or not any such person is registered * * *.

To determine whether she is a "person associated with a member," Johnson contends that the court must engage in a factual analysis of her actual employment activities, and that her actual employment activities must mirror those activities described in the defi-

nition. Because she did not occupy a position similar to those named, and because she did not perform functions similar to those described, Johnson concludes that she is not a "person associated with a member." In opposition, Piper Jaffray argues that Johnson was hired to be a bond trader, "which puts her squarely within the definition of an associated person."

█ In evaluating whether Johnson is a "person associated with a member," we remain aware that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25, 103 S.Ct. at 941–42. We decline to go beyond Johnson's job title or job description to evaluate her actual employment activities to determine whether she has attained the status of "person associated with a member." Johnson's job title of bond trader puts her squarely within the definition of "person associated with a member." Consequently, the NASD Code requires Johnson to arbitrate all of her claims against Piper Jaffray.[3]

## III.

Having concluded that the parties agreed to arbitrate Johnson's claims, we must now decide "whether legal constraints external to

2. *Accord Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1486 (10th Cir.1994) (assuming, without analysis, that NASD Code required arbitration of Title VII claims and pendent state common law claims); *Kidd v. Equitable Life Assur. Soc. of U.S.*, 32 F.3d 516, 519 (11th Cir.1994) (declining to follow *Farrand*, choosing instead to interpret the colon in Section 1 as relating to the insurance clause, because it immediately precedes the colon, and concluding that Section 1 requires arbitration of any dispute connected to a NASD member's business, "except for disputes involving the insurance business of an NASD member that are (1) between NASD members or (2) between NASD members and public customers or others"); *Gardner v. Benefits Communications Corp.*, 1991 WL 294564 (D.D.C. Dec. 31, 1991) (holding that the NASD rules require arbitration of plaintiff's employment discrimination claims brought under the District of Columbia Human Rights Act); *F.N. Wolf & Co., Inc. v. Bowles*, 160 Misc.2d 752, 610 N.Y.S.2d 757, 759 (Sup.1994) (concluding that *Farrand* was incorrectly decided and the NASD Code as it existed in 1990 provided for arbitration of employment disputes); *Spellman v. Secu-*

*rities, Annuities & Ins. Services, Inc.*, 8 Cal. App.4th 452, 10 Cal.Rptr.2d 427, 430 (Ct.1992) (holding that NASD Code section 8(a) requires arbitration of slander claim and claim of racial discrimination brought under California Fair Employment and Housing Act), *rev. denied*, (Cal. October 16, 1992). *But see F.N. Wolf & Co. v. Brothers*, 161 Misc.2d 98, 613 N.Y.S.2d 319, 322 (Sup.1994) (holding that the NASD Code did not mandate arbitration of claims arising from employment until the October 1, 1993 amendment effective date); *cf. McMahan Securities Co. v. Forum Capital Markets.*, 35 F.3d 82, 89 (2nd Cir.1994) (concluding that, regardless of whether *Farrand*'s interpretation of the NASD Code was correct, the claim was not a simple employment dispute, and therefore, arbitration of the claims was not precluded by the *Farrand* court's interpretation of the Code as excluding employment disputes).

3. Because we conclude that the NASD Code requires Johnson to arbitrate her claims, we need not, and do not, address whether the rules or the constitution of the NYSE require Johnson to arbitrate her claims.

the parties' agreement foreclose[ ] the arbitration of those claims." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985). That is, we must decide whether Johnson's claims are within a class of claims as to which agreements to arbitrate are held unenforceable. *Id.* at 627, 105 S.Ct. at 3354.

Johnson argues that the Minnesota legislature, in enacting the MHRA, has clearly evinced an intention to preclude a prospective waiver of a judicial forum for claims brought under the Act. Johnson contends that this intention precludes the court from requiring her to arbitrate her discrimination claims.

■ Although arbitration may not be appropriate for all statutory claims, "[h]aving made the bargain to arbitrate, the party should be held to it" unless the party seeking to avoid enforcement of the arbitration agreement can demonstrate that "Congress itself has evinced an intention to preclude a waiver" of a judicial forum for the statutory rights at issue. *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652 (internal quotations omitted).

■ A plaintiff's reliance on a state statutory anti-discrimination scheme, as in the present case, rather than on a federal statutory anti-discrimination scheme, does not alter the analysis of enforceability of arbitration agreements under the FAA. *See Perry v. Thomas*, 482 U.S. 483, 490, 107 S.Ct. 2520, 2525–26, 96 L.Ed.2d 426 (1987) (construing the FAA as creating a body of federal substantive law governing arbitrability, applicable to any arbitration agreement within the coverage of the FAA and enforceable in both state and federal courts). The arbitrability of state statutory discrimination claims is to be determined by reference to Congress' intent with regard to alternative dispute resolution of that class of claims. In other words, when the claim is predicated on a state statute, rather than on a federal statute, the courts are obliged to draw an analogy to the equivalent federal law, when possible, and to determine Congress' intent with regard to the rights created by that law.

*See, e.g., Fletcher v. Kidder, Peabody & Co., Inc.*, 81 N.Y.2d 623, 601 N.Y.S.2d 686, 619 N.E.2d 998 (1993). Because such an inquiry seeks to determine Congress' intent, Piper Jaffray correctly maintains that "the intent of the Minnesota legislature in passing the MHRA is irrelevant in deciding whether [Johnson's discrimination claims] are arbitrable under the FAA."

■ The closest federal analog to the MHRA, under which Johnson brings her gender discrimination claims, is Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The closest federal analog to the MHRA, under which Johnson brings her age discrimination claims, is the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Thus, the issue is whether Congress intended to exclude Title VII and ADEA discrimination claims from the FAA's coverage.[4] If such intent exists, it will be discoverable in the text of the federal statute, its legislative history, or an "inherent conflict" between arbitration and the federal statute's underlying purpose. *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652.

In *Gilmer*, the Supreme Court held that the FAA required the plaintiff, who had signed a Form U–4 and was a registered representative of the NYSE, to arbitrate his age discrimination claim brought under the ADEA. 500 U.S. 20, 111 S.Ct. at 1648–49. In *Gilmer*, the Court distinguished its earlier decision in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), which permitted a discharged employee to bring a Title VII claim to district court, notwithstanding his having already grieved the dismissal under a collective-bargaining agreement. 500 U.S. at 33, 111 S.Ct. at 1655. In *Gardner–Denver*, the Court broadly stated "there can be no prospective waiver of an employee's rights under Title VII." 415 U.S. at 51, 94 S.Ct. at 1021.

In *Gilmer*, the Supreme Court narrowed this broad statement. Distinguishing *Gardner–Denver*, the *Gilmer* Court explained: first, *Gardner–Denver* did not involve the issue of whether an agreement to arbitrate statutory claims is enforceable; rather,

---

4. Johnson's defamation claim is unquestionably subject to arbitration under the FAA.

*Gardner–Denver* involved the quite different issue of whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims; second, the *Gardner–Denver* Court, unlike the *Gilmer* court, confronted the issue of arbitration in the context of a collective bargaining agreement in which claimants were represented by unions, and as such, in the *Gardner–Denver* case, the Court was concerned about the tension between collective representation and individual statutory rights; third, the FAA governed the arbitration agreement at issue in *Gilmer*, while the FAA was inapplicable in the *Gardner–Denver* case. 500 U.S. at 35, 111 S.Ct. at 1656–57. In *Gilmer*, the Court also explicitly acknowledged that the *Gardner–Denver* Court's view that "arbitration [is] inferior to the judicial process for resolving statutory claims" had been undermined by subsequent Supreme Court cases, stating "[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." 500 U.S. at 34 n. 5, 111 S.Ct. at 1656 n. 5 (internal quotations omitted).

 *Gilmer* was an ADEA case. ADEA claims are now conclusively arbitrable under the FAA, if they are the subject of an arbitration agreement. Because we have concluded that Johnson agreed, pursuant to the NASD Code, to arbitrate her claims against Piper Jaffray, the FAA requires Johnson to arbitrate her age discrimination claim, even though she brought it under the MHRA.

*Gilmer* did not expressly decide that gender discrimination claims are to be treated the same as age discrimination claims. But one week after deciding in *Gilmer* that age discrimination claims are subject to mandatory arbitration, the Supreme Court vacated and remanded the Fifth Circuit's decision in *Alford v. Dean Witter Reynolds, Inc.*, 905 F.2d 104 (5th Cir.1990) (finding no right to compel arbitration in Title VII cases), with instructions to reconsider in light of *Gilmer*. See 500 U.S. 930, 111 S.Ct. 2050, 114 L.Ed.2d 456 (1991). On remand, the Fifth Circuit held that Title VII claims are subject to compulsory arbitration under the FAA because Title VII's statutory scheme is substantially similar to the ADEA's. *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir.1991).

 The inferences that can be drawn from the Court's vacating and remanding of *Alford* support the conclusion that Title VII claims are subject to compulsory arbitration. If the Court intended that the rule of *Gilmer* not apply to Title VII gender discrimination claims, there was no reason to vacate and remand the *Alford* decision. Since *Gilmer*, four other circuits, in addition to the Fifth Circuit, have determined that Title VII claims are subject to the FAA.[5]

In *Swenson v. Management Recruiters Intern., Inc.*, however, a statutory civil rights case decided before *Gilmer*, the Eighth Circuit Court of Appeals wrote "Congress has articulated an intent through the text and legislative history of Title VII to preclude waiver of judicial remedies for violation of both federal Title VII rights and parallel

---

5. *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482 (10th Cir.1994); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir.1992) (seeing no reason to distinguish between Title VII claims and ADEA claims); *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932 (9th Cir.1992); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991) (finding *Gilmer* dispositive, compelling the conclusion that the FAA and the arbitration provisions contained in a Form U–4 required plaintiff to arbitrate sexual harassment and discrimination claims brought under Title VII and Kentucky civil rights legislation); *see also Scott v. Farm Family Life Ins. Co.*, 827 F.Supp. 76, 80 (D.Mass.1993) (holding that claims brought under Title VII and the Massachusetts Civil Rights Act subject to mandatory

arbitration); *Benefits Communication Corp. v. Klieforth*, 642 A.2d 1299, 1304 (D.C.App.1994) (concluding "the principle set forth in *Gilmer* should apply to employment discrimination disputes under the [District of Columbia] Human Rights Act, and we thus hold that agreements to arbitrate employment discrimination claims are enforceable."); *cf. Saari v. Smith Barney, Harris Upham & Co., Inc.*, 968 F.2d 877 (9th Cir.1992) (requiring plaintiff, a registered representative with NYSE who had signed a Form U–4, to arbitrate claim brought under the Employee Polygraph Protection Act, 29 U.S.C. §§ 2001–2009, rejecting plaintiff's argument the Court's rationale in *Gilmer* is specific to the ADEA), *cert. denied*, —— U.S. ——, 113 S.Ct. 494, 121 L.Ed.2d 432.

state statutory rights, thereby exempting state statutes from the provisions of the Federal Arbitration Act." 858 F.2d 1304, 1309 (8th Cir.1988). On the basis of the congressional intent to preclude waiver, the Eighth Circuit held that Title VII and parallel state statutes were exempt from the FAA. *Id.*

In *Swenson*, the court relied heavily on *Alexander v. Gardner–Denver Co.*. Because *Gilmer* effectively limited the reasoning of *Gardner–Denver Co.* to the collective bargaining context, *Gilmer* undermines the Eighth Circuit's reliance on *Gardner–Denver Co.* and, consequently, its holding in *Swenson*.[6] Moreover, if we were to distinguish between ADEA claims and claims brought under Title VII and hold that Title VII claims are exempt from the FAA, we would thereby create a hierarchy and a potentially hazardous dichotomy between discrimination claims.[7] We decline to create such a dichoto-

my and hold that Johnson's gender discrimination claims, in addition to her age discrimination claims, are subject to arbitration.[8]

## IV.

Thus far, we have concluded that the FAA governs the enforceability of Johnson's arbitration agreement, that Johnson agreed to arbitrate her claims against Piper Jaffray pursuant to the NASD Code, and that Johnson's MHRA claims are subject to arbitration. Nevertheless, Johnson raises three other reasons why she should not be compelled to arbitrate her claims.

Johnson first argues that general contract principles of enforceability remain applicable under the FAA, and generalized unequal bargaining power, being one of those principles, is sufficient grounds to invalidate Johnson's agreement to arbitrate. In addition, John-

---

**6.** *Accord Hull v. NCR Corp.*, 826 F.Supp. 303 (E.D.Mo.1993) (concluding that the rationale underlying the Eighth Circuit decision in *Swenson* had been eroded, the court found it inappropriate to follow *Swenson* and cited *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), in which the Court held that jury trials are allowed under the ADEA notwithstanding the lack of an express provision for them in the Act, as authority for its conclusion that Title VII claims and claims brought under a state statutory right parallel to Title VII, like ADEA claims, are subject to arbitration under the FAA).

**7.** *Cf. Williams v. Katten, Muchin & Zavis*, 837 F.Supp. 1430, 1437 (N.D.Ill.1993) (rejecting plaintiff's argument that race discrimination is a more serious offense "morally distinguishable" from gender and age claims and stating that the argument that race discrimination is a special breed of offense not amenable to arbitration, "lacks both judicial and legislative support" (quoting *Scott v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1992 WL 245506 (S.D.N.Y. Sept. 14, 1992)); *Spellman v. Securities, Annuities & Ins. Services, Inc.*, 8 Cal.App.4th 452, 10 Cal.Rptr.2d 427, 434 (Cal.Ct.App.1992) (rejecting plaintiff's argument that although *Gilmer* held that statutory age discrimination claims are subject to arbitration, claims of race discrimination are of greater concern under the Constitution), *rev. denied* (Cal., October 16, 1992).

**8.** Several courts have evaluated whether the legislative history of a 1991 amendment to Title VII indicates that Congress intended to preclude the compulsory arbitration of discrimination claims, effectively legislatively overruling *Gilmer*. That amendment is found in Section 118 of the Civil

Rights Act of 1991, but it was never codified. Instead, it is relegated to a note following various sections of Title 42 of the U.S.Code. *See, e.g.,* 42 U.S.C. § 1981 note. Pub.L. No. 102–166, § 118, 105 Stat. 1071, 1081 (1991). We note that parts of the legislative history of the Civil Rights Act of 1991 suggest that Congress is concerned about employees being required to arbitrate Title VII claims. But these parts of the legislative history, relating to an uncodified section of the session law, are not enough evidence to support the conclusion that Congress intended to preclude compulsory arbitration of Title VII claims. *Accord Hirras v. National R.R. Passenger Corp.*, 10 F.3d 1142, 1146 (5th Cir.1994) (concluding "§ 118 of the 1991 Civil Rights Act encourages the use of 'alternative means of dispute resolution,' including arbitration, to resolve disputes arising under Title VII) (quoting 42 U.S.C.A. § 2000e note (West 1994)); *Williams v. Katten, Muchin & Zavis*, 837 F.Supp. 1430, 1436 (E.D.Ill.1993) (reasoning that the Civil Rights Act of 1991, by expressly approving and encouraging arbitration as a method of enforcing rights under Title VII, reinforced, rather than overrode, Congress' strong policy favoring arbitration with respect to Title VII claims); *Benefits Communication Corp. v. Klieforth*, 642 A.2d 1299 (D.C.App. 1994) (concluding that arbitration is an alternative to litigation expressly encouraged by Section 118 and the language of the section in no way suggests that the rule of *Gilmer* should no longer apply); *Fletcher v. Kidder, Peabody & Co., Inc.*, 81 N.Y.2d 623, 601 N.Y.S.2d 686, 619 N.E.2d 998 (1993) (stating that nothing in the Civil Rights Act of 1991 suggests a congressional intent to override the general rule that anticipatory contracts to arbitrate Title VII claims are enforceable under the FAA).

son maintains that she should not be compelled to arbitrate her claims against Piper Jaffray because of procedural deficiencies allegedly existing in the arbitration process. Finally, related to her contention that *claims* brought under the MHRA are not subject to arbitration, Johnson argues that her *agreement* to arbitrate her discrimination claims brought under the MHRA is unenforceable because the MHRA voids any agreement purporting to prospectively waive the right to a judicial forum for claims brought under the MHRA. Minn.Stat. §§ 363.031, 363.14. Johnson contends the FAA does not-preempt the MHRA's voiding provision.

A. *Under the FAA, a generalized attack on the involuntariness of arbitration agreements is not sufficient to invalidate an agreement to arbitrate.*

■ The FAA's purpose was to place arbitration agreements on the same footing as other contracts. *Gilmer,* 500 U.S. at 24, 111 S.Ct. at 1651. Thus, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1988). By *dictum* in *Gilmer,* the Supreme Court instructed courts, when evaluating the enforceability of arbitration agreements, to "remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Gilmer,* 500 U.S. at 33, 111 S.Ct. at 1656 (internal quotation omitted).

Johnson first asserts a general attack against arbitration agreements contained in securities registration applications. Johnson argues that her agreement to arbitrate should not be enforced because agreements to arbitrate contained in securities registration applications "are not entered into voluntarily. Rather, employees are forced to sign them upon hire and may not negotiate their terms. Such drastically unequal bargaining power is sufficient grounds for invalidation of a contract."

The Supreme Court has rejected the same general attack on the involuntariness of such arbitration agreements and has enforced an arbitration agreement identical to the agreement executed by Johnson in the present case. *See Gilmer,* 500 U.S. at 32–33, 111 S.Ct. at 1655–56. In *Gilmer,* the Court reasoned "[m]ere inequality in bargaining power * * * is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Id.* at 33, 111 S.Ct. at 1655. Noting that a claim of unequal bargaining power is best left for courts to resolve on a case-specific basis, the Court enforced the arbitration clause contained in the Form U–4 because there was "no indication" that the plaintiff, "an experienced businessman, was coerced or defrauded into agreeing to the arbitration clause * * *." *Id.*

■ Johnson does not describe the details of the formation of her contract with the NASD and the NYSE. Indeed, Johnson has failed to allege, even generally, that she, in particular, was coerced or defrauded into entering the arbitration agreement. Further, Johnson has failed to allege, even generally, that she did not know she was giving up her right to a judicial forum for her claims by signing the Form U–4. Absent any allegation that she unknowingly entered into the agreement to arbitrate or that she was coerced or defrauded into agreeing to arbitrate her claims, we reject Johnson's contention that her arbitration agreement is unenforceable on these grounds. *Cf. Prudential Ins. Co. of America v. Lai,* 42 F.3d 1299, 1302 (9th Cir.1994) (holding that a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration).

B. *Alleged procedural deficiencies in the arbitration process are not sufficient to invalidate Johnson's agreement to arbitrate her claims against Piper Jaffray.*

Johnson also maintains that she should not be compelled to arbitrate her claims against Piper Jaffray because of procedural deficiencies allegedly existing in the arbitration process. But in *Gilmer,* the plaintiff asserted the same procedural objections to arbitration of his claim under the ADEA, and the Su-

preme Court rejected them. *See Gilmer,* 500 U.S. at 30–32, 111 S.Ct. at 1654–55. Although arbitration procedures might not be as extensive as those used in courts, by agreeing to arbitrate, the Court reasoned, a party " 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.' " *Id.,* 500 U.S. at 31, 111 S.Ct. at 1655 (quoting *Mitsubishi Motors Corp.,* 473 U.S. at 628, 105 S.Ct. at 3354–55). The Court further stated that generalized attacks on arbitration rest on a suspicion of arbitration that is " 'far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes.' " *Id.* 500 U.S. at 30, 111 S.Ct. at 1654 (quoting *Rodriquez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 481, 109 S.Ct. 1917, 1920, 104 L.Ed.2d 526 (1989)).

■ The FAA creates a body of federal substantive law applicable in state and federal courts. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 25, and n. 32, 103 S.Ct. 927, 942, and n. 32, 74 L.Ed.2d 765 (1983). The Supreme Court's position in *Gilmer,* rejecting generalized attacks on arbitration, became the governing federal substantive law under the FAA, applicable in both state and federal courts. Because the procedural safeguards at issue in the present case are the same as those challenged in *Gilmer,* we are bound to reject Johnson's procedural deficiency argument as a basis for finding her claims nonarbitrable.

C. *The FAA pre-empts the MHRA to the extent the MHRA voids agreements that purport to waive the right to a judicial forum.*

Related to her contention that her age and gender discrimination *claims* brought under the MHRA are not subject to arbitration, Johnson finally argues that her *agreement* to arbitrate her discrimination claims is unenforceable because the MHRA voids any agreement purporting to prospectively waive the right to a judicial forum for claims brought under the MHRA. Minn.Stat. §§ 363.031, 363.14. Johnson contends that the FAA does not pre-empt the MHRA's voiding provision.

■ Section 2 of the FAA provides, "[a] written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984); *see also Allied–Bruce Terminix Co., Inc. v. Dobson,* —— U.S. ——, ——, 115 S.Ct. 834, 837–39, 130 L.Ed.2d 753 (Jan. 18, 1995) (declining to overrule *Southland,* the Court reiterated that the FAA pre-empts state law and state courts cannot apply state statutes that invalidate arbitration agreements). The FAA pre-empts any conflicting state law to the extent the state law requires a judicial forum. *Sacks v. Richardson Greenshield Securities, Inc.,* 781 F.Supp. 1475, 1480 (E.D.Cal.1991).

In essence, Section 2 of the FAA means that arbitration agreements cannot be invalidated solely because they are arbitration agreements. But Congress intended to allow states to be able to invalidate arbitration agreements, like contracts generally, for reasons unrelated to the fact that an arbitration agreement is at issue. Thus, as the Supreme Court stated in *Perry v. Thomas,* "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2." 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987) (emphasis in original).

■ The MHRA embodies a judicial enforcement process, and voids agreements that purport to waive the right to a judicial forum. *See* Minn.Stat. §§ 363.031, 363.14 (1992). In the present context, the voiding

provision of the MHRA takes its meaning precisely from the fact that a contract to arbitrate is at issue. As such, the voiding provision of the MHRA conflicts with the FAA, and accordingly, the FAA pre-empts it.

In *Gilmer,* the Supreme Court made it clear that a particular statute's embrace of a judicial enforcement process does not preclude arbitration. *See* 500 U.S. at 26–28, 111 S.Ct. at 1652–53. The Court recognized that "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652 (quoting *Mitsubishi Motors Corp.,* 473 U.S. at 628, 105 S.Ct. at 3354–55). The same reasoning applies to an agreement to arbitrate a claim brought under the MHRA. Thus, we conclude that the arbitration agreement is enforceable under the FAA, notwithstanding the MHRA's embrace of a judicial enforcement process.

Affirmed.