Dennis MANSON, et al., Appellants,

v.

DAIN BOSWORTH INCORPORATED,
et al., Respondents.

No. C8–98–458.

Court of Appeals of Minnesota.

July 28, 1998.

Review Denied Oct. 20, 1998.

Rebecca E. Bender, The Bender Law Firm, P.A., Minneapolis, for appellants.

James B. Lynch, Katherine McConahay Nealon, Dorsey & Whitney, LLP, Minneapolis, for respondents.

Considered and decided by LANSING, P.J., RANDALL, and SCHULTZ*, JJ.

## OPINION

LANSING, Judge.

A National Association of Securities Dealers (NASD) arbitration panel found

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

against the claimants in a dispute over investment advice and stock purchases. The claimants applied to the district court to vacate the award pursuant to the Minnesota Arbitration Act (MAA) and the Federal Arbitration Act (FAA). The district court dismissed the proceedings, finding that the claimants had failed to properly serve the application to vacate under Minnesota law. Because the district court correctly applied Minnesota's procedural requirements to the parties' application to vacate the arbitration award, we affirm.

## FACTS

In May 1996, appellants Dennis Manson and his daughter, Melissa Krueger, brought claims in arbitration against Dain Bosworth, their Dain broker, and the Dain officer charged with supervising the broker. Manson and Krueger brought their claims under Minnesota law, alleging misrepresentation, negligence, unauthorized trading, and unsuitable solicited recommendations.

Manson had signed a margin agreement in 1992 that contained both an agreement to arbitrate and a choice-of-law provision. The agreement to arbitrate provided that the Federal Arbitration Act would govern all questions of arbitrability; the choice-of-law provision specified that the agreement would be governed by Minnesota law. Krueger had not signed a margin agreement, but joined Manson as a co-claimant in the arbitration.

After a four-day hearing in Minneapolis in April 1997, the NASD arbitrators found against Manson and Krueger and dismissed their claims. Manson and Krueger's attorney received a copy of the award on May 6, 1997, and served notice on Dain Bosworth's attorney of an application to vacate the award in Hennepin County District Court. The notice was served on August 4, 1997, exactly 90 days after receipt of a copy of the award.

Relying on the margin agreement, the district court concluded that the FAA governed the arbitrability of disputes but that all other issues were controlled by Minnesota law. The court determined Manson and Krueger failed under Minnesota law to properly serve notice of their application to vacate the arbitration award because the notice did not satisfy the requirements of Minn.R.Civ.P. 4.03. Manson and Krueger now appeal.

## ISSUES

I. Did the district court err in determining that Minnesota's requirements for service of process apply to an application in Minnesota state court to vacate an arbitration conducted pursuant to the MAA and the FAA?

II. Does the FAA preempt the application of Minnesota's procedural rules for service of process?

## ANALYSIS

 The district court's power to enforce or vacate an arbitration award is created by statute. *See* Minn.Stat. §§ 572.19, 572.24 (1996); *AFSCME Council 96 v. Arrowhead Reg. Corr. Bd.*, 356 N.W.2d 295, 299–300 (Minn.1984). The construction of a statute is a question of law, fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). The arbitrators' authority to resolve disputes is derived from the parties agreeing in advance to submit a particular grievance to arbitration. *Johnson v. Piper Jaffray*, 530 N.W.2d 790, 795–96 (Minn.1995). As with the interpretation of any contract, the district court's construction of the contract is subject to de novo review. *Id.* at 795.

### I

 It is well established that to initiate an action in a Minnesota court, a plaintiff must follow the procedures set forth in the Minnesota Rules of Civil Procedure. Minn.R.Civ.P. 3.01; *Bloom v. American Express Co.*, 222 Minn. 249, 257, 23

N.W.2d 570, 575 (1946) ("Each state has the right to prescribe by law how its citizens shall be brought into its courts.") (quoting 3 Beale, Conflict of Laws § 586.1). Thus, the law of the forum determines the proper method for service of process. *Bloom,* 222 Minn. at 256, 23 N.W.2d at 575.

 The specific requirements for service of a summons in Minnesota are stated in rule 4, which provides for personal service on an individual or acknowledged service by mail. Minn.R.Civ.P. 4.03 (personal service), 4.05 (service by mail). If the manner of service is not authorized by rule 4, it is not effective. *See Duncan Elec. Co., Inc. v. Trans Data, Inc.,* 325 N.W.2d 811, 812 (Minn.1982). Whether a summons and complaint is properly served is a jurisdictional question of law, *McBride v. Bitner,* 310 N.W.2d 558, 562 (Minn. 1981), which this court reviews de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1982); *Amdahl v. Stonewall Ins. Co.,* 484 N.W.2d 811, 814 (Minn.App.1992), *review denied* (Minn. July 16, 1992). Manson and Krueger brought their motion to vacate in a Minnesota state court. Accordingly, they must comply with Minnesota's requirements for initiation of an action.

Service of process on an opposing party in a proceeding to vacate an arbitration award is further controlled by statute:

Applications to Court

> Except as otherwise provided, an application to the court under this chapter shall be by motion and shall be heard in the manner and upon the notice provided by law or rule of court for the making and hearing of motions. *Unless the parties have agreed otherwise,* notice of an initial application for an order shall be served in the manner provided for the service of a summons in an action.

Minn.Stat. § 572.23 (1996) (emphasis added).

Manson and Krueger's motion to vacate was an initial application for an order; thus, they were required to serve notice of their application in the manner provided for service of a summons. *Id.* Under Minn.R.Civ.P. 4.03, a summons must be personally served. The exception in Minn. R.Civ.P. 4.05 for service by mail with a responsive acknowledgement does not apply because no acknowledgement of service was requested or obtained. *See* Minn. R.Civ.P. 4.05 (provisions for service by mail when voluntarily acknowledged). Under rule 4.03, service on a party's attorney is also ineffective. *See* Minn.R.Civ.P. 4.03 (designating proper recipients of service of summons).

Minn.Stat. § 572.23 purports to create an exception to the general service requirements for initiating judicial review when the parties have "agreed otherwise." Neither party has argued that this provision is an unconstitutional encroachment on the judicial power to establish rules of court procedure, and our analysis therefore proceeds on the assumption that the exception in Minn.Stat. § 572.23 is a constitutional exercise of legislative power.

Manson and Krueger argue that the proceeding is subject to the FAA, and therefore service by mail on Dain Bosworth's attorney was effective. *See* 9 U.S.C. § 12 (1996) (notice of motion to vacate, modify, or correct an award must be served upon adverse party or his attorney); Fed.R.Civ.P. 5(b) (when service on an attorney is permitted under the rules, it is complete upon mailing). We agree that the FAA specifically provides that notice of a motion to vacate an award "must be served upon the adverse party or his attorney." 9 U.S.C. § 12. But the FAA does not address whether that provision governs initial applications to the court or whether the service must be personal or can be accomplished by mail.

Manson and Krueger advance their arguments jointly. But because Manson signed the margin agreement that incorpo-

rated the FAA and Krueger did not, their arguments must be analyzed separately.

■ In signing the margin agreement, Manson agreed to the following key provisions:

12. AGREEMENT TO ARBITRATE CONTROVERSIES.

\* \* \* \*

I agree \* \* \* that all controversies which may arise between me and Dain Bosworth Incorporated or any of its present or former agents or employees concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether the transaction or the agreement is entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration before and in accordance with the rules then in existence of the New York Stock Exchange or the National Association of Securities Dealers, the forum to be selected by the party initiating the arbitration. *The arbitrability of disputes under this agreement shall be governed by the Federal Arbitration Act.*

\* \* \* \*

15. GOVERNING LAW. Except as otherwise provided in paragraph 12, *this agreement and its enforcement will be governed by the laws of the State of Minnesota.*

(Emphasis added.)

Under this agreement, the FAA governs the arbitrability of disputes, and Minnesota law governs all other issues—including questions of procedure such as service of process. *See Pirsig v. Pleasant Mound Mut. Fire Ins. Co.,* 512 N.W.2d 342, 343 (Minn.App.1994) (arbitrability means "the authority of the arbitrators to hear the matter before them") (citing *Koranda v. Austin Mut. Ins. Co.,* 397 N.W.2d 357, 360–61 (Minn.App.1986), *review denied*

(Minn. Feb. 13, 1987)). Consequently, even if the FAA provisions could be read to vary the method of service, the margin agreement provides that Minnesota law controls all issues except the arbitrability of disputes. Dain Bosworth and Manson did not agree to a method of service different from the provisions of Minnesota law.

Krueger did not sign the margin agreement, and she cannot rely on its provisions to alter the requirements for service of the application for judicial review. Because there is no agreement between Krueger and Dain Bosworth as to the manner of service, Krueger is subject to Minnesota's service requirements.

We reject as meritless the argument that the FAA should apply because Manson and Krueger referred to it in their motion to vacate. This unilateral act does not evidence an agreement between the parties to apply other procedural rules for service of an initial application for an order. *See* Minn.Stat. § 572.23 (Minnesota procedural rules apply to motion to vacate arbitration decision unless parties agreed otherwise in arbitration agreement).

II

■ Manson and Krueger's second argument is that the FAA and relevant portions of the Federal Rules of Civil Procedure preempt the MAA and Minnesota service requirements. Reserving the issue of whether personal jurisdictional requirements are preemptible,[1] we address the preemption arguments. Enacted to ensure that "private arbitration agreements are enforced according to their terms," the FAA applies to arbitration agreements arising out of transactions involving interstate commerce. *Volt Info. Sciences, Inc. v. Board of Trustees of Stanford University,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). Because the FAA is designed to give effect to private arbitration agreements, parties may agree to

1. The issue of whether the preemption doctrine could apply to forum-determined rules

for obtaining personal jurisdiction was not raised in the trial court or argued on appeal.

arbitrate disputes under state law instead of the FAA—so long as the designated state law does not "require a judicial forum for resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* (citing *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984)).

Although the FAA does not contain an express preemption provision and does not reflect congressional intent to occupy the entire field of arbitration, the federal act may preempt a state law "to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Volt,* 489 U.S. at 477, 109 S.Ct. at 1255 (citing *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Put another way, courts may not "invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996).

Because Minnesota's personal service requirements are procedural, the district court did not err by applying Minnesota's requirements instead of the corresponding FAA provision. First, the Supreme Court has not held that federal procedural rules apply to proceedings in state court, even when the FAA preempts a substantive state law. *See Southland Corp.,* 465 U.S. at 16 n. 10, 104 S.Ct. at 861 n. 10 ("In holding that the Arbitration Act pre-empts a state law that withdraws the power to enforce arbitration agreements, we do not hold that §§ 3 and 4 of the Arbitration Act apply to proceedings in state courts."). In fact, in *Volt,* the Court explained:

> There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration—rules which are manifestly designed to

encourage resort to the arbitral process—simply does not offend the rule of liberal construction set forth in *Moses H. Cone,* nor does it offend any other policy embodied in the FAA.

*Volt,* 489 U.S. at 476, 109 S.Ct. at 1254; *see also Atlantic Painting & Contracting, Inc. v. Nashville Bridge Co.,* 670 S.W.2d 841, 846 (Ky.1984) (procedural aspects of FAA are confined to federal cases and there is "nothing in the Act remotely suggesting that the 'motion to vacate' procedure, including the three month time limitation set up for federal proceedings, has any application at all to such state action"); *Xaphes v. Mowry,* 478 A.2d 299, 301 (Me. 1984) (state court "not compelled" to apply federal courts' jurisdictional rule merely because action filed under FAA; therefore, "question of appealability depends on this Court's interpretation of state procedural requirements"); *McClellan v. Barrath Constr. Co.,* 725 S.W.2d 656, 658 (Mo.Ct. App.1987) (because state courts are not bound by FAA's procedural provisions, they may look to state law to determine appealability of order compelling arbitration).

Second, although Minnesota courts have not addressed whether state procedural laws apply to actions under the FAA, this court has held that state procedural laws apply to other federal claims brought in state court. *See Carter v. Cole,* 526 N.W.2d 209, 214 (Minn.App.), *aff'd,* 539 N.W.2d 241, 241 (Minn.1995).

Finally, we believe the district court's conclusion would be correct even if these requirements were substantive. The key issue in determining whether the FAA preempts a substantive state law is whether the state law is an obstacle to the purposes and objectives of the FAA. The main purpose and objective of the FAA is to make sure that courts—both state and federal—give effect to private arbitration agreements. Here, the private arbitration agreement established by appellant Manson and respondents Dain Bosworth pro-

vides that the FAA will govern questions of arbitrability while Minnesota law will govern everything else. Accordingly, application of Minnesota law upholds the FAA's purpose and underlying policies because it gives effect to the parties' intent. *See Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1396 (D.C.Cir.1995) (applying Connecticut's 30–day limitations period instead of the FAA's more liberal 90–day period did not conflict with the FAA's "primary purpose" and "actually promotes the FAA's primary goal by enforcing the parties' contract to arbitrate according to its terms").

State laws that have been held to be preempted by the FAA are laws that undermine the private arbitration process by making it difficult to enforce the underlying agreement. For example, in *Doctor's Associates*, the U.S. Supreme Court held that the FAA preempted a Montana law that imposed on arbitration agreements a special notice requirement that was not applicable to all contracts. 517 U.S. at 687, 116 S.Ct. at 1656–57. The Court determined that the state law directly conflicted with the FAA because it "conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally." *Id.*

Although appellant Krueger is not subject to the margin agreement, application of Minnesota law to her claim does not interfere with the purpose and objectives of the FAA either. Krueger submitted her claims to arbitration under Minnesota law, participated in a hearing, and received a decision. She brought her motion to vacate under both the MAA and the FAA, but failed to follow the procedural requirements for service under the MAA. Although our decision precludes judicial review of the motion to vacate, it by no means undermines the arbitration process. Unlike preempted "anti-arbitration" laws designed to preclude enforcement of private arbitration agreements, the MAA simply requires claimants to follow the same procedural requirements for service of process that apply in any other civil action unless they agree otherwise. When there is no evidence the parties have agreed otherwise, courts have no choice but to hold parties to these procedural requirements.

Among Manson and Krueger's remaining arguments, only two require comment: (1) whether the district court erred in concluding that respondents did not comply with Minnesota's service requirements; and (2) whether the district court should have ruled on the merits of the appellants' motion to vacate because they still had time to serve their motion under the provision of Minnesota law that provides for a motion to be brought within 90 days of discovery of "corruption, fraud, or other undue means." *See* Minn.Stat. § 572.19 (1996).

▮ As to the first argument, there is no evidence in the record to suggest that Manson and Krueger met the requirements for personal service or service by mail under rule 4. Manson and Krueger simply mailed their motion to the attorney who represented Dain Bosworth during the arbitration. Because Manson and Kruger did not include an acknowledgment of service form in their mailing, and Dain Bosworth did not consent to accept service by mail, this service was not effective. Minn.R.Civ.P. 4.05 ("If acknowledgment of service under this rule is not received by the sender within the time defendant is required by these rules to serve an answer, service shall be ineffectual."); *Coons v. St. Paul Cos.*, 486 N.W.2d 771, 775 (Minn.App.1992), *review denied* (Minn. July 16, 1992) (service by mail not perfected without return of acknowledgment form).

▮ Manson and Krueger's contention that the district court should have ruled on the merits of their dispute because they still had time to effect proper service based upon recently learned evidence of corruption or undue means in the arbitra-

tion process also lacks support. According to the record, Manson and Krueger did not personally serve their motion to vacate until January 13 and 14, 1998—more than one month after the motion hearing on December 4, 1997, and roughly one week after the district court issued its order dismissing their claims without prejudice. Because the motion had not been served on the date of the motion hearing, the court lacked jurisdiction to consider the merits. The district court correctly concluded the issue of whether plaintiffs had additional time to file and serve their motion was not before the court.

## DECISION

Although the district court incorrectly implied that the margin agreement applied to both Krueger and Manson, it correctly concluded that Minnesota's requirements for personal service applied to the parties' motion to vacate. Moreover, because Minnesota's requirements for service are general court rules that apply to all civil actions and are not designed to impede private arbitration contracts, these requirements are not preempted by the Federal Arbitration Act.

Affirmed.